## VANDERKEMP and VAN HALL vs. SHELTON and others.

Where H. conveyed a lot of land to K. and W., and took back a mortgage for the purchase money, which was duly recorded, and K. and W. sold and conveyed the premises to S. and S., who gave a mortgage thereon to K. one of the grantors, which the latter assigned to A. C. S., and that mortgage and the assignment thereof were duly recorded, and A. C. S. previous to May, 1836, assigned the same mortgage to E., and guarantied the collection thereof, and H. subsequently foreclosed his mortgage in chancery, without making E., the then owner of the second mortgage, a party to the foreclosure, and A. C. S. became the purchaser of the premises at the master's sale under the decree; *Held*, that the sale to A. C. S. did not impair the rights of E. or his assignees, who were not parties to the foreclosure suit; and that A. C. S., by his purchase at the master's sale, only obtained an interest in the mortgaged premises to the extent of the amount due upon the first mortgage, at the time of the sale to him, and the equity of redemption of S. and S. in the premises subject to the payment of the second mortgage.

*Held also*, that as between A. C. S. and S. and S., the proceeds of the mortgaged premises beyond the amount due upon the first mortgage, was the primary fund for the payment of the amount due upon the second mortgage, and should in equity be applied for that purpose, before resorting to the personal liability of S. and S. upon their bond.

And A. C. S. having, subsequently to his purchase at the master's sale, mortgaged the premises to the president of the Merchants' Exchange Bank, in payment of stock of such bank; and the officers of the bank having no actual notice of the assignment of such mortgage at the time of receiving the assignment of the second mortgage to E., made previous to the commencement of the foreclosure suit of H.; *Held further*, that the record of that assignment was constructive notice, to the subsequent mortgagees of A. C. S. that he was not the owner of the second mortgage at the time he purchased in the premises at the master's sale, and that his title to the premises was not valid as against the assignees of that mortgage; they not being parties to the foreclosure suit.

*Held also*, that as A. C. S. guarantied the payment of the second mortgage only in case S. and S. and their interest in the land were unable and insufficient to pay the same, he had an interest in keeping the right he had acquired, to the amount due upon the mortgage to H., distinct from his interest in the equity of redemption of S. and S. in the premises subject to the second mortgage; and that his interest in the first mortgage did not merge in his legal title as the owner of such equity of redemption; and that his mortgagees were entitled to the same rights which he acquired under the master's deed, to the extent of the amount due upon their mortgage.

And the assignees and owners of the second mortgage having filed a bill to foreclose their mortgage, and for a sale of the premises to satisfy the several liens and claims thereon according to equity; *Held further*, that the complainants were entitled to a decree of foreclosure and sale; and that it was not necessary that they should first redeem the premises from the previous sale under the decree in the

Vanderkemp v. Shelton.

former suit to which they were not parties; and that in distributing the proceeds of the sale, A. C. S., and those claiming under him as his mortgagees, should be first paid, out of the proceeds of the sale, the amount due upon the mortgage of H. at the date of the master's deed, with interest thereon, after deducting therefrom the rents and profits of the premises from the time A. C. S. took possession under the master's deed, and making an allowance for taxes, assessments and repairs, and for their costs. And that the complainants should then be paid the amount of their mortgage and costs; and that the residue of the proceeds, if any, should be paid to A. C. S. and his mortgagees, they being entitled to the equity of redemption, under the master's deed in the first foreclosure suit, and under the subsequent mortgage.

Under the provisions of the revised statutes, the principles of the recording acts are extended to an assignment of a mortgage of an interest in real estate; and the record of such an assignment is constructive notice thereof to all subsequent assignees of the mortgage who purchase the mortgage from the assignors. And unless such assignment is recorded, it will be invalid as against a subsequent assignee or purchaser of the mortgage, in good faith and without notice, whose assignment shall be first duly recorded.

Where a second mortgage is assigned, and the assignment is not recorded, and the mortgagee in the first mortgage makes the mortgagee in the second mortgage a party to his bill of foreclosure, but does not make the assignee a party, a bona fide purchaser at the master's sale, or a subsequent purchaser under him, who has no notice of such assignment at the time of his purchase, will be protected against the claim of the assignee under such unrecorded assignment. But if the assignment is recorded, and the assignee is not made a party to the foreclosure suit, the record of the assignment will be constructive notice to the purchaser at the master's sale, and to all persons claiming under him, of the right of such assignee, and that such assignment is not affected by the sale under the decree.

A purchaser of mortgaged premises, at a sheriff's sale under a junior judgment, or at a master's sale under a decree in a suit to foreclose a junior mortgage, in which the owner of the first mortgage is not a party, only acquires title to the equity of redemption in the mortgaged premises; and is only supposed to bid to the value of that equity, subject to the payment of the prior mortgage thereon. He cannot, therefore after such purchase, take an assignment of such prior mortgage, and charge the mortgagor with the amount of such mortgage, by a suit upon his bond; before he has exhausted his remedy by a resort to the mortgaged premises; as the primary fund for the payment of the mortgage debt.

And where the mortgagor is compelled to pay the prior mortgage, after such a sale under a subsequent judgment or mortgage, he will in equity be subrogated to the rights of the first mortgagee, and will have the right to an assignment of such prior bond and mortgage, to enable him to reimburse himself from the fund in the hands of such purchaser of the mortgaged premises.

A junior mortgagee may file a bill to foreclose his mortgage and for a sale of the mortgaged premises, and for the payment of all incumbrances thereon out of the proceeds of the sale. And by the practice in this state he may make the prior mortgagee a party to the suit, without offering to redeem and pay the prior mortgage.

And where the prior mortgagee is made a party to such a suit, if he is in possession under his mortgage, he can only ask that he shall not be unnecessarily subjected to costs, where the proceeds of the sale of the premises will not probably be sufficient to pay his debt and costs.

THIS was an appeal, by the defendants, A. C. Stevens, and Sherman Stevens, president of the Merchants' Exchange Bank of Buffalo, from an order of the vice chancellor of the eighth circuit. On the 13th of October, 1835, J. D. Hoyt conveyed lot No. 96 of the state survey, of the mile strip reservation in the town of Buffalo, containing about 300 acres, to Kingman and Welty; and he took back from them a mortgage, of $7500, to secure the payment of the purchase money. On the same day, Kingman and Welty conveyed the premises to the defendants Smith and Shelton. And these grantees, on the same day, gave back to Kingman a bond and mortgage, to secure the payment of $5220, in ten yearly payments, with annual interest. Kingman assigned that bond and mortgage to A. C. Stevens, one of the appellants, on the 19th of December, 1835; and the mortgage and assignment were duly recorded together, on the 21st of the same month. In February, 1836, A. C. Stevens assigned the bond and mortgage to David E. Evans, by an assignment endorsed upon the original mortgage, and guarantied the collection thereof when the same should become due and payable. This assignment was recorded in the book of mortgages, in May, 1836, by recording the assignment endorsed upon the mortgage merely, and by referring to the book and page in the records where the original mortgage and the assignment thereof to A. C. Stevens were recorded. And in August, 1837, Evans assigned the bond and mortgage to the complainants; which last mentioned assignment was also duly recorded, two days after the execution thereof.

In November, 1836, Hoyt filed a bill in chancery to foreclose his mortgage, against Kingman and Welty, the mortgagors; and Shelton and Smith, their grantees, were also made defendants. But neither A. C. Stevens, the original assignee of the bond and mortgage given by Shelton and Smith to Kingman, nor Evans, who then held that bond and mort-

gage under the assignment to him of February, 1836, were made parties to the suit. In November, 1837, Hoyt obtained a decree of foreclosure in that suit; and the mortgaged premises were sold by the master, under such decree, in February, 1838, and were purchased by A. C. Stevens for $8945. The master's deed was duly recorded in March, 1838. On the 5th of May thereafter, A. C. Stevens mortgaged the premises to Kissam, to secure the payment of $8000 in eight years, with annual interest; and Kissam assigned this mortgage to the appellant Sherman Stevens, as the president of the Merchants' Exchange Bank of Buffalo, in November, 1838. And in December, 1838, A. C. Stevens gave another bond and mortgage upon the premises to Sherman Stevens, as such president of the said bank to secure the payment of the sum of $2000 and interest. The consideration of the last mentioned mortgage and of the assignment of the $8000 mortgage from Kissam, was scrip issued to A. C. Stevens the mortgagor, for $10,000 of the capital stock of the banking association. The officers of the association, at the time they issued the scrip and received the mortgages in payment of such stock, supposed that the title of A. C. Stevens to the premises was perfect, under the master's deed upon the sale in Hoyt's foreclosure suit. And they had no actual notice that he had assigned the mortgage of Shelton and Smith to any person.

The complainants filed their bill, in this cause, in May, 1839, as the assignees of the bond and mortgage given by Shelton and Smith to Kingman, to obtain satisfaction of the second and third instalments of principal and interest which had then become due thereon and remained unpaid. The bill was taken as confessed against the mortgagors and the other defendants therein, except A. C. Stevens and the president of the Merchants' Exchange Bank of Buffalo. And as to the two last named defendants the cause was heard before the vice chancellor, upon pleadings and proofs. The vice chancellor decided the cause in substance, against the appellants; but supposing that he had no power to make such a decree as would be equitable between them and Shelton and Smith, the mortgagors, he made an order that the proceedings in this cause be suspended until the complainants should have ex-

Vanderkemp v. Shelton.

hausted their remedy at law against Shelton and Smith, upon their bond accompanying the mortgage to Kingman. (*See* 1 *Clark's Rep.* 321.)

*E. F. Smith,* for the appellants. The guaranty of A. C. Stevens was a guaranty of collection, and not of payment. No right of action or claim exists against him until the complainants have exhausted their remedy at law against Shelton and Smith. (1 *Wend.* 457. 19 *John.* 69. 13 *Wend.* 534. *Evan's Poth. on Oblig.* 218, *pt.* 2, *ch.* 3, *art.* 1, § 5, *Phil. ed.* 1820.) A person promises to pay upon a certain condition, and pays by mistake before the condition is accomplished, the payment may be reclaimed. (*Evan's Poth.* 230, *pt.* 2, *ch.* 3, *art.* 3, § 2. *Com. Dig. tit. Conditione, D,* 1. *Ibid, tit. Assumpsit. Ughtred's case,* 7 *Coke,* 9. *Fonbl.* 400. 19 *John.* 71. 6 *Cowen,* 624.) The assignment with guaranty, by A. C. Stevens, was not a new mortgage, it was a mere transfer or making over unto Evans the whole interest or estate which the assignee had at the time of the assignment. The title subsequently acquired by A. C. Stevens did not enure to confirm the mortgage assigned to Evans. Subsequently acquired interests only enure to the benefit of a prior grantee when there is an existing obligation to have it so enure. Stevens, when the bill was filed, was under no obligation to discharge or remove the prior charge, or to protect the title of Shelton and Smith against adverse claims. The lien of the bank was prior in point of time to that of complainants, and cannot be divested by any liability of A. C. Stevens, which accrued subsequently to the execution of the mortgage of the former. The effect of the foreclosure of the Hoyt mortgage, without making Evans a party, leaves the complainants' right to a lien on the land and their equity of redemption in the mortgaged premises unimpaired. As the Merchants' Exchange Bank do not derive title from Shelton and Smith, there is no equity of redemption in the bank to be foreclosed in this suit. The record of the assignment to Evans was not constructive notice to the bank, and the proofs show that the bank

had no actual notice. The bank is a bona fide incumbrancer without notice, and its lien will be protected.

*E. Norton,* for the respondents. Sherman Stevens had notice of the claim of the complainants, and he took his mortgages subject to the equities existing between the complainants and A. C. Stevens. The assignment from A. C. Stevens to Evans, with guaranty, was a mortgage of the premises by Stevens, and was prior to the mortgages of Sherman Stevens. The title subsequently acquired by A. C. Stevens, enured to confirm the mortgage assigned to Evans. A. C. Stevens and those claiming under him are estopped by his assignment, and also by his guaranty from disputing the complainants' claim. If the complainants are bound to exhaust their remedy on the bond before proceeding against the land, it may be done in this suit; and if not, this bill will not be dismissed, but proceedings on it will be suspended until the remedy is exhausted at law.

THE CHANCELLOR. The sale under the decree, in the foreclosure suit, brought by Hoyt upon the first mortgage, was wholly inoperative as to the rights of the assignees of the bond and mortgage executed by Shelton and Smith, which assignees were not parties to that suit. The only right therefore, which A. C. Stevens acquired under that sale, as against such assignees, was the right to the prior lien upon the premises to the extent of the money due and unpaid upon Hoyt's mortgage; in the same manner as if Hoyt had assigned that mortgage to him without foreclosure. But as against Shelton and Smith, who were defendants in that suit, he acquired the equity of redemption which remained in them previous to the master's sale. And it may be important to ascertain what the equity of redemption thus acquired was; for the purpose of determining the question, whether the second mortgage ought in equity to be paid out of the surplus proceeds of a sale of the mortgaged premises, after satisfying the Hoyt mortgage, or by Shelton and Smith.

So far as the rights of A. C. Stevens are concerned, no question whatever arises as to constructive notice of the assignment of

the second mortgage. At the time he purchased, at the master's sale, he well knew that the second mortgage was not held by Kingman, one of the defendants in that suit, and that the person who owned that mortgage at the time the foreclosure suit was commenced was not a party. For he had himself previously assigned that mortgage to Evans; and the fact that Evans was not a party to the foreclosure suit appeared upon the face of the decree under which A. C. Stevens purchased. The equity of redemption in the mortgaged premises which remained in Shelton and Smith, previous to the master's sale, was the right to the surplus value of such premises, after satisfying not merely the first mortgage to Hoyt, but also the second mortgage which then belonged to the complainants in this suit. If A. C. Stevens had purchased that equity of redemption under a judgment, against Shelton and Smith, which was subsequent in time to both mortgages, he certainly could not have afterwards taken assignments of the bonds and mortgages and resorted to the personal liability of the mortgagors, upon their respective bonds, before he had exhausted his remedy against the land itself for the payment of those debts. And if the mortgagors were compelled to pay the amount of their bonds to any other persons, as the owners of such bonds and mortgages, the mortgagors would, in equity, be entitled to an assignment of the bonds and mortgages to enable them to compel the purchaser of the. equity of redemption to refund the amount, to have it charged on the land upon which such mortgages were liens. ( *Tice* v. *Annin*, 2 *John. Ch. Rep.* 128. *Heyer* v. *Pruyn*, 7 *Paige's Rep.* 470.) The legal presumption in such cases is, that the purchaser of a mere equity of redemption only bids to the value of such equity of redemption beyond the amount of the previous specific lien upon the premises. It would therefore be clearly unjust and inequitable to permit him to keep the land, at the price thus bid, and to resort to the personal liability of the mortgagor to satisfy the amount of such specific lien.

So in this case; A. C. Stevens, when he purchased at the master's sale, knew there was an outstanding mortgage upon the equity of redemption, and that the purchaser at such sale would only acquire an interest in the premises to the extent of the amount then

Vanderkemp *v.* Shelton.

due upon Hoyt's mortgage, and the right to the equity of redemption, upon paying the amount due upon the second mortgage which was a specific lien on the premises. And if he had subsequently taken an assignment of the second bond and mortgage, he could not, in equity, have been permitted to resort to the personal liability of the mortgagors, in the first instance, without giving them the benefit of the specific lien upon the land after satisfying the amount due upon the first mortgage. The case is entirely different where the several incumbrancers, having liens upon the equity of redemption, are all made parties to the foreclosure suit; so as to give to the purchaser under the decree a perfect title, discharged of all equity of redemption in their favor. In that case the legal presumption is that the purchaser gives the full value of the property; and the whole proceeds of the sale are applied to the payment of the incumbrances in the order of their priorities. Whatever remains unpaid, therefore, after thus applying the proceeds of such sale, is properly chargeable against the mortgagors personally. Even if A. C. Stevens had not guarantied the collection of the bond and mortgage assigned to Evans, I think, as between him and Shelton and Smith, the value of the premises beyond what was due upon the Hoyt mortgage was the primary fund, in equity, for the payment of the mortgage which at the time of such sale belonged to the complainants, and which was in no way barred or affected by such sale. Independent of the guaranty, therefore, if the subsequent mortgages to Kissam, and to Sherman Stevens as president of the banking association, had not been given, the complainants would have been entitled to a decree for the sale of the mortgaged premises; with directions to the master to apply the net proceeds of such sale as follows: *First*, to pay to A. C. Stevens, the amount due upon the mortgage to Hoyt, and the interest thereon, and also to pay to him, as the owner of the first incumbrance, his costs in this suit. *Secondly*, to pay to the complainants out of the proceeds of the sale, as the owners of the second lien upon the premises, the amount of their debt and costs, or so much thereof as the residue of the proceeds of the sale would pay of the same. *Thirdly*, to pay the surplus proceeds of the sale, if any, to A. C.

Stevens as the owner of the equity of redemption, by virtue of his purchase under the previous decree to which the owners of the second mortgage were not parties. The decree which would have been proper, in the case supposed, should also have provided that if the proceeds of the sale were not sufficient to pay the amount of the debt and costs due to the complainants, after paying the costs and expenses of the sale and the amount due to A. C. Stevens for his debt and costs, as before directed, the master should specify the amount of the deficiency in his report; and that Shelton and Smith, the mortgagors in the second mortgage, pay to the complainants the amount of such deficiency with interest.

What, then, is the effect of the guaranty contained in the assignment of the bond and mortgage to Evans? That guaranty was that Evans, or his assignees, should be able to collect the several instalments upon that bond and mortgage which were then unpaid, from time to time as they became due, together with the interest thereon; either from the proceeds of the mortgaged premises or from the mortgagors or their other property. It could not, therefore, have been the intention of the parties, in case the mortgaged premises were insufficient to pay the whole of this debt, in addition to the previous incumbrance thereon, that the assignee should be at liberty immediately to resort to the guarantor, after exhausting his remedy against the land, subject to the prior lien. Nor can the guaranty be considered as a covenant that the land itself should actually produce sufficient to pay the second mortgage; so as to enable the assignee to take the benefit of the prior mortgage, which the assignor acquired under the master's sale, to satisfy the amount due upon such junior mortgage, instead of resorting to the personal liability of Shelton and Smith for the deficiency. The only alteration, therefore, which would have been proper in the decree above suggested, on account of this guaranty, if A. C. Stevens had not executed the subsequent mortgages, would have been a further direction, that upon the return of an execution against Shelton and Smith unsatisfied, A. C. Stevens, as such guarantor, should pay to the complainants so much of the deficiency as remained uncollected from

time to time, when it should become due and payable according to the terms of the assigned bond and mortgage.

The purchase at the master's sale by A. C. Stevens, therefore, did not merge the first mortgage, in the equity of redemption which he also acquired by the same purchase. For the intermediate mortgage which was not foreclosed, and the interest of the purchaser to keep the first mortgage and the equity of redemption separate and distinct, so as to compel the complainants to resort to the personal liability of Shelton and Smith, in the first place, for any deficiency there might be after paying the first mortgage, would prevent the merger. (*Crow* v. *Tinsley,* 6 *Dana's R.* 402.)

Upon examining the provisions of the revised statutes, I think there is very little doubt that the vice chancellor is right as to the effect of the recording of the assignments of the mortgage to Kingman, as constructive notice to Kissam, and to the banking association, as mortgagees of the premises after the sale by the master. Previous to the revised statutes it had been decided, by the court for the correction of errors, in the case of *James* v. *Morey,* ( 2 *Cow. Rep.* 246,) that actual notice of the assignment of a mortgage was necessary to invalidate payments subsequently made to the assignor, by the mortgagor or his representatives. But it was also decided, in that case, that the recording acts did not apply to the assignment of a mortgage; and that no notice of the assignment, either actual or constructive, was necessary to protect the assignee of the mortgage against a subsequent assignee, or against other persons claiming under the assignor. In other words, that as between the assignee of a mortgage and subsequent assignees or purchasers from the assignor thereof, the rights of the parties depended upon the rule of law as it existed previous to the recording acts. That rule was that the first grantee, or assignee, of an interest in real estate, was entitled to a preference, whether the subsequent assignee, or purchaser, had or had not notice of the prior assignment or grant. The revised statutes, however, extended the beneficial provisions of the recording acts to the case of the assignment of a mortgage; by declaring that the term *purchaser*, as used in the chapter of the revised statutes relative to the proof and recording

of conveyances of real estate, &c. should be construed to embrace every person to whom any estate or interest in real estate should be conveyed for a valuable consideration, and also to embrace every assignee of a mortgage, or lease, or other conditional estate; and that the term *conveyance*, as there used, should be construed to embrace every instrument in writing by which any estate, or *interest*, in real estate was created, aliened, mortgaged or assigned, or by which the title to any real estate might be affected in law or equity, with two or three specified exceptions. (1 *R. S.* 762, § 37, 38.) And to show that the intention was to include assignments of mortgages within the general provisions of that chapter, requiring such conveyances to be recorded in order to make them constructive notice, it is only necessary to refer to the note of the revisers to the 41st section; where they say distinctly that assignments of mortgages will be included in the term *conveyance* as previously defined.

What notice, then, would the mortgagees of A. C. Stevens have had of the legal and equitable rights of the complainants, if they had searched the records at the time of taking their respective mortgages, in 1838; for the purpose of ascertaining what title he obtained under the master's deed? They would have found that Hoyt's mortgagors had conveyed to Shelton and Smith, who had afterwards mortgaged the premises to Kingman, who was one of the parties to the foreclosure suit. And if the assignment from him to A. C. Stevens had not been upon record, they would have been authorized to presume that Kingman was still the owner of the mortgage given to him by Shelton and Smith; and that his interest in the premises as such mortgagee had been foreclosed by a decree to which he was a party. Although A. C. Stevens, the purchaser, who had actual notice of the several assignments by which Evans became the owner of that mortgage before the commencement of the foreclosure suit, would not have been protected against the lien of that mortgage in the case supposed, yet his subsequent mortgagees, who had advanced their money and scrip upon the faith of the security upon the land, and without any notice, either actual or constructive, of the rights of the complainants, would have been

protected against this intermediate incumbrance which had not in fact been foreclosed. But they were bound to look further than the mere record of the mortgage to Kingman, to see whether he was still the owner of that mortgage at the time of the commencement of the foreclosure suit of Hoyt, and of the filing of the notice of *lis pendens*. And if they had done so they would have ascertained the fact that the second mortgage did not belong to a party to the foreclosure suit; and that the only interest A. C. Stevens had in the premises which was paramount to that incumbrance, was the interest which the complainant in the suit had, at the time of the sale under the decree, as the owner of the first mortgage. They cannot, therefore, be considered as bona fide mortgagees, as against the complainants as the owners of the second lien upon the mortgaged premises, beyond the amount actually due upon the mortgage to Hoyt.

The order appealed from was clearly erroneous, in directing that the proceedings in this suit should be suspended until the complainants should have exhausted their remedy at law upon the bond of Shelton and Smith. And although the appellants were not entitled to have the bill dismissed, they are entitled to have the proper decree made, without further delay, to ascertain the rights of the several parties, in order that the mortgaged premises may be sold and the proceeds thereof applied accordingly. The complainants' bill is properly framed for that purpose; as this is a bill for a foreclosure and sale of the equity of redemption in the mortgaged premises, to satisfy the several incumbrances thereon according to their respective priorities, and is not a mere bill to redeem. In England, the court does not decree a sale of mortgaged premises, but merely allows the second incumbrancer to file a bill to redeem from the first incumbrance, and that the junior incumbrancers may redeem both of the prior ones, or be foreclosed. And the complainant there, is in all cases, required to offer to redeem the first incumbrance. But here, where the puisne creditor has the right to a sale of the estate to satisfy his debt, after applying so much of the proceeds of the sale as may be necessary to pay the debt and costs of the prior incumbrancer, he is not required to offer to pay the first

incumbrance. All that the prior incumbrancer has a right to ask, even where he is in possession under his incumbrance, is that he shall not be subjected to useless costs, when the proceeds of the sale will not probably be sufficient to pay the amount of his debt, with interest, and the costs of foreclosure.

The order appealed from must therefore be reversed. And a decretal order must be entered referring it to one of the masters of this court to compute and ascertain the amount due to the complainants upon their bond and mortgage ; stating the amount due and payable, and the amount to become due hereafter, with interest thereon to the date of his report. The master must also compute the amount due to the defendant A. C. Stevens as the purchaser of the interest of Hoyt in the mortgage executed by Kingman and Welty to him; and in ascertaining that amount he must credit A. C. Stevens with the amount remaining unpaid at the time of the decree of foreclosure in the suit of Hoyt, and the subsequent interest, and must charge him with the rents and profits of the mortgaged premises from the time he took possession thereof under the master's deed, after deducting taxes, assessments, and repairs. (7 *Dana's Rep.* 70. *Lloyd & Goold's Rep. Temp. Sugden,* 246. 2 *Sum. Rep.* 143.) The decree must also direct the master to ascertain and compute the amount due and to become due, for principal and interest, on the mortgage given by A. C. Stevens to Kissam, and also upon the one given to Sherman Stevens as president of the Merchants' Exchange Bank of Buffalo; and to ascertain who is the holder or owner of those mortgages. The decree must then direct that upon the coming in and confirmation of the master's report, the mortgaged premises be sold, by a master, in the usual form. And out of the net proceeds of the sale the master must pay the amount reported due to the defendant A. C. Stevens, as follows : *first,* to the holder of the mortgage given to Kissam, so much as may be reported due upon that mortgage, if the sum reported due to A. C. Stevens as the purchaser, of the interest of Hoyt, is sufficient for that purpose ; *secondly,* to the holder of the mortgage to Sherman Stevens as president, the amount reported due thereon, if the amount due to A. C. Stevens is sufficient for that

purpose; and *thirdly*, to A. C. Stevens the balance, if any, of the amount reported due to him. Out of the proceeds of the sale the master must next pay to the solicitor of the defendant Sherman Stevens, as president of the banking association, his costs of this suit to be taxed; not including, however, any costs upon this appeal. And out of the proceeds of the sale, he must next pay the amount reported due to the complainants, together with their costs in this suit to be taxed, exclusive of their costs upon this appeal. If any thing remains of such proceeds, he must then pay the balance, if any, which remains unpaid to the holders of the Kissam and Sherman Stevens mortgages respectively; and must pay the residue of such proceeds to A. C. Stevens, or his solicitor, as the owner of the equity of redemption in the mortgaged premises. The decree will also direct that if the proceeds of the sale shall not be sufficient, in the order of payment herein directed, to pay and satisfy the amount due to the complainants with interest and costs, that the master specify the amount of such deficiency in his report; stating therein the amount of such deficiency which has then become due and payable, and the amount which is thereafter to become due, separately; and that the defendants Shelton and Smith pay such deficiency as shall then have become due, together with the interest thereon from the date of the master's report of the sale, immediately, and that the complainants have execution therefor. The decree must further direct that upon the return of the execution against Shelton and Smith, for such deficiency, unsatisfied, the defendant A. C. Stevens, as the guarantor of the collection of the bond and mortgage of Shelton and Smith, pay to the complainants the amount of the deficiency, then due and payable, which shall remain uncollected, and that they have execution therefor against him. And as to the amount of such deficiency which shall not have become due and payable at the date of the master's report of the sale, the complainants must have liberty to apply for further directions, for the payment thereof by Shelton and Smith, or by A. C. Stevens, as shall be equitable and just, after the same shall have become due and payable.