CHILVER *vs.* WESTON and others.

1. Where the holder of a mortgage of real estate, on which was a subsequent mortgage, brought suit on his mortgage, in this court, for foreclosure and sale of the mortgaged premises, and they were sold accordingly, but the holder of the subsequent mortgage was not made a party to the suit— *held,* that the holder of such subsequent mortgage might maintain a suit to foreclose it.

2. In such last-mentioned suit the purchaser at the former sale will be entitled to the rights of all the parties foreclosed in the former suit, and will be subrogated thereto accordingly.

3. He will not be allowed the costs of the former foreclosure and sale, the proceedings not binding the holder of the subsequent mortgage.

4. The fact that the holder of such subsequent encumbrance has waited seventeen years before bringing suit for foreclosure, will not bar him of his claim to relief.

5. A judgment creditor, whose claim was secured by a trust mortgage on the premises, the trustee under which was made a defendant to the suit, although the judgment creditor was not, is barred of his claim against the property by the foreclosure and sale.

6. Where, after such foreclosure and sale, the first mortgagee, who was the purchaser, has, at the request of the mortgagor, and to release him from liability on his bond, receipted the bond and mortgage and signed an acknowledgment of receipt of the amount of the decree, and authorized cancellation of the mortgage and decree, though the mortgage and decree were not, in fact, canceled of record, he will, nevertheless, in the subsequent foreclosure suit, be entitled to the benefit of the bond and mortgage.

Bill to foreclose.   On final hearing on pleadings and proofs.

*Mr. C. L. Corbin,* for complainant.

*Mr. S. B. Ransom,* for Weston and wife and their mortgagees.

THE CHANCELLOR.

Abraham B. Demarest and William Howe being partners in business, and tenants in common of certain real estate in Jersey City, in 1855 dissolved their partnership, the latter

taking the business and also the real estate. For his partner's interest in the business and property, he agreed to pay $1000, and accordingly gave his bond to Demarest for that sum, with interest, secured by his mortgage to the latter on his real estate. He also agreed to pay the debts of the concern. He never paid anything on that mortgage. It was dated on the 1st of May, 1855, and was duly registered on the 10th of September, in that year. Demarest assigned it to Charles T. Duryea, by assignment dated March 7th, 1856, and duly recorded on the 12th of that month. Duryea assigned it to William A. Lewis, by assignment, dated January 10th, 1869, and the latter assigned it to the complainant a few days thereafter. Demarest and Howe, on the 3d of January, 1855, gave a mortgage on the same premises, to George Ford, to secure the payment of $4000 on the 3d of July, 1858, with interest. It contained a provision that in case any payment of interest should be in arrear for thirty days, the principal should thereupon be due and payable. This mortgage was assigned by Ford to Reuben Ross, junior, on the 23d of May, 1856, and Ross, on the 11th of August following, assigned it to the defendant, Ezra B. Weston. On the 5th of March, 1857, the principal having become due, by reason of failure to pay the interest for over thirty days, Weston instituted a suit in this court for foreclosure. To that suit Demarest was made a party, by reason of the mortgage given to him by Howe, but which, at that time, was owned by Duryea, who was not made a party. Neither was John M. Wilcox, who, on the 9th of February, 1857, recovered a judgment against Howe in the Supreme Court of this state. The defendants were Demarest and Howe, and their wives; Edgar B. Wakeman, to whom Howe had given a mortgage on the property, prior to that which was given to Demarest, to secure certain notes given by Howe to creditors of Demarest and Howe; Evan Jones, who held a mortgage given to him by Howe, subsequent in date and registry to that which was given to Demarest; and John L. Burst, who was supposed to have some claim, by deed, to part of the property. The proceedings resulted in a decree

that the mortgaged premises be sold to pay, in the first place, to Edgar B. Wakeman the amount due him, $175, for assessments, taxes and water rents on the property paid by him; in the second place, to Weston $4303,33, due to him on his mortgage, with interest thereon and his costs; and in the third place, to Edgar B. Wakeman $3914.56, due on his mortgage, with interest thereon. An execution was issued on that decree and the property was sold by the sheriff thereunder, on the 29th of October, 1857, to Weston for the sum of $300. The sheriff conveyed the property, by deed dated July 9th, 1858, to him accordingly. On the 1st of May, 1868, he mortgaged the property to John Ross, to secure the payment of $3500 and interest, and on the 26th of October following; he mortgaged it to Catherine Anderson, to secure the payment of $1500 and interest. Weston has had possession of the property ever since the time of the sheriff's sale, or about that time. The complainant filed his bill to foreclose the mortgage given to Demarest. Weston, Anderson, Ross and Douglass, who is the owner, by assignment, of the Wilcox judgment, have each answered. All of these, except Douglass, insist that the complainant cannot maintain a suit for foreclosure of his mortgage, but can only redeem. They also insist that Duryea, who was the owner of the complainant's mortgage at the time of the foreclosure, had actual notice of the pendency of the suit, and further, that the complainant should be held to be estopped, by the acquiescence of those under whom he claims, from setting up his mortgage against them. The complainant's mortgage was given for a full consideration and is a valid security. That Duryea and those who claim under it, have held it from May 7th, 1856, to July 1st, 1873, the time of filing the bill in this cause, without attempting to compel payment of it, will not deprive the complainant of his rights under it. Among these rights is that of maintaining proceedings to foreclose, and that right is in no wise affected by the foreclosure under the Ford mortgage. He does not, it may be remarked, appear to have had, in fact, any notice of that foreclosure. He seems to have never heard of it until after

the sheriff's sale. Nor would the fact that he knew of the pendency of the proceedings, of itself have barred his right to maintain a suit to foreclose, so long as he was not a party to the action. The complainant was bound, in order to foreclose him, to make him a party to the suit. *Vanderkemp* v. *Shelton*, 11 *Paige* 28 ; *McCall* v. *Yard*, 1 *Stockt.* 358 ; *Kilborn* v. *Robbins*, 8 *Allen* 466. Weston did not, by his purchase at the sheriff's sale, acquire Duryea's interest in the property, and those to whom he has, since that time, mortgaged the premises, cannot, under the circumstances, be held to stand in any better position than he himself does. Neither he nor they have acquired any title by estoppel. *Vanderkemp* v. *Shelton, supra.*

It is insisted by the complainant, that because Weston, after the sheriff's sale, receipted his bond and mortgage and decree, in full, and authorized the cancellation of the mortgage and decree of record, neither he nor those who claim under him, can now avail themselves of them, in any way, but all claim under them must be regarded as extinguished. It appears that after the sheriff's sale, Howe applied to Weston for a discharge of his liability on the bond, alleging as his reason, that without it he could not obtain his discharge from his other creditors. It appears, also, that Weston, in consideration of $250, paid to him by Howe, consented to discharge him from liability on the bond, and accordingly signed a receipt, written on the face of the bond, acknowledging the receipt of the full amount of the bond and mortgage, and requesting the clerk of Hudson county to enter satisfaction of the latter of record. On the same day he signed a receipt acknowledging that he had received from Demarest and Howe, the full amount of the decree, and requesting the clerk of this court to enter satisfaction thereof. Neither the mortgage nor the decree was, in fact, canceled of record. He and his mortgagees, notwithstanding those receipts, are entitled to the benefit of the mortgage and the decree in this action. It is manifest that he intended, by the receipts, merely to discharge Howe from his personal liability on the bond, and had no intention of affecting his security under the mortgage, and for

aught that appears, neither he nor Howe contemplated any such result. By his purchase at the sheriff's sale, he acquired, not only the title which he had held as mortgagee, but the title which Edgar B. Wakeman had as mortgagee, both of these mortgages being prior to that of the complainant in this suit. He acquired, also, the title of Jones as mortgagee, and that of Howe as owner of the property.

The judgment now owned by William P. Douglass, is proved to have been founded on promissory notes given to John M. Wilcox, the plaintiff therein. Those were among the notes, the payment of which was secured by the mortgage to Wakeman. By the sheriff's sale, Wilcox's claim to the mortgaged premises for payment of those notes, was extinguished. The property was sold to pay them. There will be a decree for foreclosure and sale of the mortgaged premises, to pay, in the first place, the amount due on the mortgage to Ford and the mortgage to Wakeman, including the $175 awarded to Wakeman by the decree in the foreclosure suit for taxes, assessments and water rents paid by him, but not including costs of foreclosure or sale, (for the proceedings are not binding on the complainant, *Benedict* v. *Gilman*, 4 *Paige* 60 ; *Parker* v. *Child*, 10 *C. E. Green* 41,) and deducting therefrom, the amount with which Weston is chargeable for rents and profits of the mortgaged premises, (allowing the cost of all necessary repairs, and all taxes and assessments paid by him for or in respect of the property,) and Weston's costs of this suit ; and in the second place, to pay to the complainant, the amount due on his mortgage and his costs of this suit. Out of the moneys raised by the sale, excepting the money directed to be raised for the complainant, the defendants Anderson and Ross will be paid the amounts due them respectively, on their respective mortgages, with their respective costs of this suit, in the order of the priority of their mortgages, and any surplus remaining will be paid to Weston.