Atwater v. West.

Edward S. Atwater

*v.*

John S. West.

1. Where the holder of the first of two mortgages upon a lot of land, brought suit in this court on his mortgage for foreclosure and sale of the mortgaged premises, and they were sold accordingly, but the holder of the second mortgage, though the assignment to him was duly recorded when the suit was brought, was not made a party to the suit, *Held*, that the holder of the latter mortgage might maintain a suit to foreclose upon his mortgage.

2. The first mortgagee in this case was not allowed to recover the amount of certain municipal assessments upon the premises, paid by him after his purchase at the sheriff's sale under his foreclosure, because said assessments were illegal, and the payment thereof might have been successfully resisted.

Bill to foreclose, and cross-bill praying that complainant in the original bill may be required to redeem. On final hearing on pleadings and proofs.

*Mr. W. P. Wilson* and *Mr. E. S. Atwater*, for complainant.

*Mr. C. Ewan Merritt*, for defendant.

The Chancellor.

The complainant, Edward S. Atwater, filed his bill to foreclose his mortgage upon certain land and premises in the city of Elizabeth. His mortgage was, when it was given, the second upon the premises. It was given by Mahlon Tucker and his wife to Ithamar Charles Conkey, and it is dated

November 25th, 1870. The defendant, West, held the first mortgage on the premises. It was given by Tucker and his wife, and was dated November 3d, 1866. The complainant's mortgage was assigned by Conkey to David Richardson, by assignment dated on the same day of the date of the mortgage, November 25th, 1870, and the assignment was duly recorded on the 2d of December following. The mortgage was subsequently assigned by Richardson to the complainant, Edward S. Atwater, by assignment dated December 4th, 1874, and duly recorded on the 24th of March, 1875.

On the 19th of March, 1873, West filed his bill in this court to foreclose his mortgage. He made Tucker and his wife, and Conkey, and them alone, parties to the bill. At that time the complainant's mortgage was held by Richardson, to whom, as before stated, Conkey had assigned it on the day of its date, by assignment recorded on the same day. Conkey, having no interest in the suit, did not appear; and Richardson had no knowledge of the existence of the suit until after the property was advertised for sale under the execution. A decree for foreclosure and sale was entered in the cause in favor of West for $2,365.64, and an execution issued accordingly, under which the property was purchased by him, on a bid of $2,600, on the 19th of November, 1873, and a deed was executed and delivered to him by the sheriff therefor on the 1st of December, following. West paid the sheriff the difference between the amount due him on his decree and the amount of his bid. There was then due on the decree, for principal and interest, the sum of $2,432.30. As soon as the deed was delivered, West authorized a firm of real estate agents in Elizabeth to rent the property for him, and he has exercised control over it and has been in possession of it, by his agents and tenants, ever since that time. The original bill in this suit is filed against Tucker and West and their wives. It states the foreclosure proceeding, and sale and conveyance just mentioned, and prays a foreclosure and sale of the premises to pay the complainant's mortgage. West answered the bill, denying Atwater's right to a decree

of foreclosure, and setting up West's title under his fore-closure, and alleging that Richardson was aware of the foreclosure proceedings in that suit before the sale took place, and expressed a desire, before the sale, to be per-mitted to redeem West's mortgage; that an opportunity was accorded to him to do so, but he did not avail himself of it, and that the complainant, Atwater, was, at the time, his confidential adviser and had notice of this suit; the fact that Richardson was not a party to it, and that Richardson before the sale knew of the existence of the foreclosure suit and of the decree therein, and had sought an opportunity to redeem, which had been granted, but of which he did not avail himself. West then filed the cross-bill, setting up the same matters, and praying that Atwater might be required to redeem, and to that end to pay to him the principal and interest due on his mortgage, and the amount expended by him for repairs, and for taxes and municipal assessments upon the property. The complainant answered the cross-bill. Replications having been filed, the testimony in the cause was taken under an agreement between the counsel of the parties that the same testimony might be used in both the original and cross-suits. Atwater has a right to a decree of foreclosure and sale of the mortgaged premises. *Vander-kemp* v. *Shelton,* 11 *Paige* 28; *McCall* v. *Yard,* 1 *Stock.* 358; *Kilborn* v. *Robbins,* 8 *Allen* 466; *Chilver* v. *Weston* 12 *C. E. Gr.* 435. By his purchase under his own foreclosure, West obtained the interest he had had as mortgagee, and the equity of redemption of Tucker and wife.

The rights of Richardson were not affected by the fore-closure. The fact that Conkey was a party to the suit is of no importance, for he had no interest whatever in the mort-gaged premises. He had parted with his interest as mort-gagee, more than two years previously, by the assignment to Richardson, which was duly recorded a few days afterward. West, therefore, had constructive notice of that assignment. The fact that his solicitor, before commencing the suit for foreclosure, procured a certificate of search from the clerk of

the county where the mortgaged premises are situated, in which the assignment did not appear, and that neither West nor his solicitor knew of the assignment, cannot affect the rights of Richardson or the complainant as his assignee. Nor is the allegation of the answer, in the original suit and the cross-bill, in regard to Richardson's failure to take advantage of the alleged opportunity to redeem, sustained. Mr. Richardson testifies that he never had any notice of the foreclosure suit; that the first knowledge he had on the subject was by seeing the advertisement of sale in the newspaper, three days before the day on which the sale was advertised to take place; that he had a conversation with West on the 24th of September, 1873, the day on which, according to the advertisement, the sale was to take place; that he then expressed to the latter his surprise at the foreclosure, seeing that the proceedings were not binding on him, but said that he would consent to the sale if some satisfactory arrangement could be made between them; that West then asked him what would be satisfactory to him; on his requesting the former to state what were the best terms he would make if he, Richardson, should buy the property at the sheriff's sale to protect himself, West answered that they were $600 in cash, and Richardson's bond for $2,000 with a mortgage on the property for two years; that he accepted the proposition, and they both went to the sheriff's office; that Mr. Tucker obtained an adjournment of the sale for four weeks; that at the expiration of that time they met again at the sheriff's office, and Tucker procured another like adjournment; that at the expiration of that time West and Richardson met at the sheriff's office, and the latter told West that he was there to purchase the property upon the proposition that West had made, and which he accepted; that West then replied that he would not carry out the proposition, and that if he, Richardson, wanted to buy the property he must pay all the money due, and that if anything was to be made out of the property he wanted to make it himself. He adds, that not being prepared to pay the whole amount of the money, he

Atwater *v*. West.

was obliged to submit to the sale. West does not deny the material parts of this statement. He purchased the property at the sheriff's sale with full knowledge of the infirmity of the proceedings under which he proposed to take his title. Nor is there any ground on which it could be held that the complainant is barred by laches.

The property is still in the hands of West, and no new right has supervened. The complainant's claim is wholly unaffected by the sale to West. It is not barred by limitation or presumption of law or equity. Nor will the complainant be required to redeem. His bill for foreclosure and sale of the property under his mortgage, was filed before West's bill to require him to redeem was filed. Under the circumstances, he is entitled to the relief which he seeks, and cannot be deprived of it by the filing of the cross-bill. *Kilborn* v. *Robbins, ubi supra.*

There will be a decree that the mortgaged premises be sold to pay, in the first place, the amount due to West on his mortgage; in the next place, the amount due on Atwater's mortgage, with his costs of this suit; the balance to be paid to West, as owner of the property. In computing the amount due to West on his mortgage, he will be required to account for the rents and profits which he has received, or reasonably ought to have received, from the premises since the delivery of the sheriff's deed to him. He will be allowed for any necessary repairs he may have put upon the premises, and for the taxes, but not for the municipal assessments paid by him. Those assessments were for a sewer and for paving. They were levied under the charter of the city.

The city surveyor, by whom the assessment for paving was made, and whose duty it was, under the charter, to make it, testified that the whole cost of the paving improvement was divided on the whole street, according to the number of front feet in each lot; and that no regard was had to the depth of the lot, nor to the improvements

thereon; and that the whole cost was laid on the property on the line of the street on which the pavement was laid. This assessment was, indeed, made in conformity with the directions of the charter of the city; but it was an illegal, and therefore invalid assessment. It would not have been sustained at law, and a title under it would have been extinguished by this court. *State, Agens* v. *Mayor, &c. of Newark,* 8 *Vr.* 415; *Bogert* v. *City of Elizabeth,* 12 *C. E. Gr.* 568.

The sewer assessment was laid under a provision of the charter that the whole of the cost, damages and expenses of constructing any sewer or drain in any part of the city shall be, by a just and equitable assessment, assessed upon the owners of all the land and real estate benefited thereby, in proportion, as nearly as may be, to the advantage each shall be deemed to acquire. *P. L.* 1863, § 101. This provision is not in contravention of the constitution or of natural law. *Village of Passaic* v. *State, Del., Lack. & West. R. R. Co.,* 8 *Vr.* 538. It does not appear, however, by the report of the commissioners by whom the assessment was made, that the amount assessed upon the mortgaged premises did not exceed the amount of advantage derived by the property from the improvement, and that omission is fatal to the validity of the assessment. It therefore would have been set aside, or title thereunder extinguished, for that cause.

This view of the subject renders it unnecessary for me to consider the question, raised on the hearing, as to whether, under the charter, that assessment was a lien upon the land. West paid both these assessments after he received his deed for the property from the sheriff. To allow them would be to deprive the complainant of his lawful rights in respect to them, and to compel him to allow claims against which he would have had a valid defence. West will not be allowed the costs of his foreclosure suit, or of the sheriff's sale thereunder. They are not chargeable against the complainant. *Parker* v. *Child,* 10 *C. E. Gr.* 41; *Chilver* v. *Weston,* 12 *C. E. Gr.* 435. The cross-bill will be dismissed, and West will be

required to pay the costs of that suit. It was not necessary to enable the court to grant him the relief to which he is entitled, and the rest of the relief sought thereby is denied. There must be a reference to a master.