## CLIFT and others *vs.* WHITE.

Where the executor of a mortgagee purchases the mortgaged premises, in his own right, at a sale thereof in a foreclosure suit, brought upon a second mortgage, the prior mortgage becomes thereby merged in the fee, in equity as well as at law, and a suit to foreclose the same will be perpetually enjoined.

A merger will take place upon the union of a greater and lesser estate in the same person, although they may be held in different rights; provided the accession of one estate to the other is by the act of the party, and he has the right to dispose of the lesser estate, under the same circumstances and to the same extent that it would take place if the estates were held in his own right, leaving it in equity to be determined as a question of intention, express or implied.

At law, when a greater and less estate meet and coincide in the same person, without any intermediate estate, the rule is inflexible, and the less estate is at once merged in the greater; but in equity the rule is not inflexible, but is made to depend upon the *intention* of the person in whom the estates unite; and the estates will continue as separate estates in the same person, if the intention of the person so to keep them is shown.

But the parties will be presumed to have intended the legal consequences of their acts; and hence a legal merger—merger being an act of law—will be held to have taken place in law, unless the intention to keep the estates

separate is established; that is, the unity of the two estates in the same person will establish a merger, in equity, without any evidence aliunde of any intent, and devolve it upon the party resisting a merger to show that the parties did not intend this legal consequence of their act to ensue. Prima facie the lesser estate is extinguished.

THIS was an action to restrain and perpetually enjoin the foreclosure of a mortgage given by one Artemas L. Freeman to Daniel Kellogg in his lifetime, for $2500, upon 280 acres of land owned, at the time of the execution of the mortgage, by the mortgagor. The plaintiffs now own about 123 acres of the mortgaged premises, and claim that the mortgage became merged in the fee upon the purchase of the premises by George F. Leitch, one of the executors of the mortgagee. The action was referred, by consent of parties, and a judgment was entered upon the report of the referee, in favor of the plaintiff, according to the prayer of the complaint, from which the defendant appealed. The material facts as found by the referee, so far as the same are necessary to be stated, are as follows : The mortgage in question was dated March 4, 1835. Daniel Kellogg, the mortgagee, died May 4, 1836, having constituted John Kellogg, George F. Leitch and David A. Comstock, the executors of his will. On the 12th day of September, 1836, Freeman, being still the owner of the mortgaged premises, executed a second mortgage upon the same premises to the executors of Kellogg, to secure the payment of the sum of $2800, which last mortgage was, in 1840, foreclosed by the mortgagees, as executors, in the court of chancery, and the premises were sold by a master, under a decree of the court, on the 10th day of October, 1840, and purchased by George F. Leitch, one of the executors, for the sum of $600, the executors, as such, then holding and owning the first mortgage for $2500. The referee found that the purchase was made by Leitch in his individual capacity, and not as executor or in trust for the estate represented by him. On the 26th of February, 1842, Leitch and wife conveyed by warranty deed to one Eusebius Lawrence, 123$\frac{27}{100}$ acres, parcel of the mortgaged premises, now owned by the plaintiffs " subject to a mortgage executed by A. L. Freeman and wife to Daniel Kellogg for $2500 and inter-

est from January 1, 1842," (the mortgage in question,) and the referee found that the amount of said mortgage was allowed as a part of the purchase money of the premises. Lawrence executed to Leitch a mortgage for a portion of the purchase money, which mortgage was assigned by Leitch to the executor of Russell Gibbs, by whom it was foreclosed in chancery and the premises sold by a master, under a decree of the court, and purchased by Leitch for the sum of $305. In the master's terms of sale it was declared to be subject to the mortgage in question. April 1, 1845, Leitch and wife by warranty deed conveyed the same 123 acres to the plaintiffs, having before conveyed the residue of the mortgaged premises to other persons. There was evidence that Leitch managed and sold the premises with a view to the payment of the debts of Freeman the original owner, and that a portion of the premises or the avails of the sale thereof, was thus applied by him. On the 25th day of May, 1843, the executors of Kellogg, by an assignment dated July 30, 1841, assigned the mortgage in question to John Wilkinson, president of the Bank of Syracuse, a banking association organized under the general banking law, receiving stock in said bank, therefor. Freeman then signed an indorsement on the mortgage, admitting notice of the assignment and that there was due thereon the full amount of principal, with interest from the January preceding, without any offset or discount whatever. By assignment from Wilkinson, the defendant became the assignee of the mortgage, on the 25th of April, 1850, and at the commencement of this action, had commenced proceedings to foreclose the mortgage and sell the mortgaged premises, under the statute and the power of sale contained in the mortgage.

*B. Davis Noxon*, for the plaintiffs.

*P. Outwater, Jun.* for the defendant.

*By the Court,* W. F. ALLEN, J.   I shall assume, for all the purposes of this case, that the learned referee is right in his conclusion, upon the evidence, that Leitch, by his purchase at

the master's sale, in 1840, acquired the fee of the mortgaged premises, in his individual capacity, and not as executor or trustee; for if upon such purchase the mortgage held and owned by him and others as executors was extinguished by merger in the estate thus acquired, a fortiori would such mortgage interest have merged in a like estate acquired by him as executor. Indeed I do not understand it to be contended by the counsel for the defendant that if the mortgage interest and the estate in fee had met in the same person, holding each in the same right, the former would not have become extinguished in the latter, unless some circumstances existed to prevent the merger. Before entering upon an examination of the law of merger, as applicable to this case, it will be well to see the situation of the parties and their relative rights and liabilities in respect to the subject matter of the controversy.

And first. At the time of the purchase of the premises by Leitch each of the executors of Mr. Kellogg, as such executor, had title to the bond and mortgage of Freeman, (now claimed to be owned by the defendant,) that is, the executors had a joint and entire interest in the effects of the testator, and the acts of one, relating to the delivery, sale, or release of the testator's goods, were the acts of all, and binding upon all. ( *Williams on Executors*, 591. *Wheeler* v. *Wheeler*, 9 *Cowen*, 34. *Murray* v. *Blatchford*, 1 *Wend.* 583.) A release or discharge of the mortgage in question by Leitch alone would therefore have been a good discharge of the mortgage, and any act of Leitch by which his interest in the mortgage, or his right to enforce the same, was discharged or destroyed, would have bound all the executors, and operated as a discharge of the mortgage. ( *Williams' Executors*, 592, and cases cited in notes (e) and (f.) *Toller's Law of Executors*, 359 and 360.)

Secondly. By the sale of the premises upon the junior mortgage and the purchase thereof by Leitch, the premises became the primary fund for the payment of the prior mortgage, (the mortgage in question;) the purchaser having acquired the title only to the equity of redemption and taken the premises subject to the prior incumbrance. Had the mortgagor been

compelled to pay the mortgage debt he would have been entitled
to reimbursement out of the mortgaged premises. (*Tice* v. *An-
nin*, 2 *John. Ch. Rep.* 125. *McKinstry* v. *Curtis*, 10 *Paige*,
503. *Heyer* v. *Pruyn*, 7 *Id.* 465. *Kinney* v. *McCullough*,
1 *Sandf. Ch. Rep.* 370. *Russell* v. *Allen*, 10 *Paige*, 249.)
Freeman, upon payment of the mortgage, would have been en-
titled to be subrogated to the rights of the mortgagee, and to an
assignment of the mortgage, to enable him to reimburse him-
self from the primary fund, to wit, the mortgaged premises.
(*Vanderkemp* v. *Shelton*, 11 *Paige*, 28. *Mathews* v. *Aikin*,
1 *Comst.* 595.) Leitch then, whether he had by reason of his
dealing with the property become personally responsible to the
estate of Kellogg for the payment of the mortgage debt, or not,
had become the owner of property primarily charged with the
payment, and which greatly exceeded in value the amount of
the debt, and as executor he was the holder and owner of the
debt thus charged upon his estate. Had he, after this, collected
the amount of Freeman, the obligor, the latter would have had
an immediate remedy against the property of Leitch for the
amount paid. It appears to me to follow as a necessary conse-
quence that he would not, as executor, have been permitted to
enforce the collection of the debt against the mortgagor until he
had exhausted his remedy against the mortgaged premises, or
in other words, until he had applied the property in his hands,
confessedly more than sufficient in value for that purpose, to
the payment of the debt. The liability of the mortgagor was
merely nominal, and the mortgage debt was in substance a mere
charge upon the premises in the hands of Leitch. It being con-
ceded as it must be, that Leitch had the power to discharge the
mortgage, and having purchased the equity of redemption in
the premises mortgaged, and thus possessed himself of the pri-
mary fund for the payment of the debt, ample for that purpose,
it seems to me that equity would estop him from alleging that
the charge still existed and had been kept alive in his hands for
no other purpose, so far as the evidence discloses, except to de-
fraud his grantee. It does not appear that creditors or any
other person had, at the time of the purchase by Leitch, any

Clift v. White.

interest in keeping the mortgage alive as a lien separate and distinct from the estate of Leitch in the premises. The case is simply this. Leitch, as executor, holds and owns the mortgage debt, and while so holding and owning it, becomes possessed of property properly and primarily applicable to its payment, more than sufficient in value for that purpose. Shall it not then, as against innocent third persons and in the absence of evidence that other persons have equities adverse, be said to be paid? But farther, Leitch has sold the property and converted the fund into money; and why may he not be said to have received it as executor and to have become responsible to the estate he represents, for the amount? If so, then clearly the mortgage had no vitality, as such, at the time of the assignment to Wilkinson, and the plaintiff is entitled to the relief he asks. But notwithstanding the decision of the appeal upon these suggestions I proceed to examine the doctrine of the law of merger, as applicable to the case. And first, upon the assumption that the law of the case is the same it would have been had Leitch owned the mortgage, and the estate in fee, in the same right. Writers are not fully agreed as to the origin or the reasons of this branch of the law, or upon the principles upon which it should be applied to cases as they arise. I will content myself with taking the law as I find it, applying the principles, so far as I find them settled by authority, to this case, without attempting to go beyond what is written.

Merger of estates takes place when a greater estate and less coincide and meet in one and the same person, without any intermediate estate; the less is immediately merged or lost in the greater. Rights are said to be merged when the same person who is bound to pay, is also entitled to receive. (2 *Black. Com.* 177.) At law, when a greater and less estate meet and coincide in the same person without any intermediate estate, the rule is inflexible, and the less estate is at once merged in the greater; but in equity the rule is said not to be inflexible, but is made to depend upon the intention of the person in whom the estates unite, and the estates will continue as separate estates in the same person, if the intention of the person so to keep them is

shown. (*James* v. *Morey*, 2 *Cowen*, 246.) But in this, as in every other case, the parties will be presumed to have intended the legal consequences of their acts, and hence a legal merger, as merger is an act of law, will be held to have taken place, in law, unless the intention to keep the estates separate is established; that is, the unity of the two estates in the same person will establish a merger in equity, without any evidence aliunde of any intent, and devolve it upon the party resisting a merger to show that the parties did not intend this legal consequence of their act to ensue. Prima facie the lesser estate is extinguished. So in the case cited it is said that if a mortgagee purchases or takes a release of the equity of redemption, the whole estate is vested in him, and the mortgage is extinguished, and with it the mortgage debt, unless intention, incapacity to elect, or interest of the mortgagee, intervene to prevent it. Equity only preserves distinct estates and rights uniting in the same person when the intention to keep them distinct is expressed or implied. When the equity of redemption is devised to the mortgagee, this union extinguishes the mortgage, if that result would be indifferent to the devisee and mortgagee, unless some act be done to keep it on foot. (*Moffatt* v. *Hammond*, 18 *Ves.* 384.) If the interest of the party requires the incumbrance to be kept on foot, equity will presume that he intended that result. (*Starr* v. *Ellis*, 6 *John. Ch. Rep.* 393.) This case is commented on by Justice Sutherland in *James* v. *Morey*, but the general principle laid down by the chancellor in relation to the law of merger, is not dissented from; the judge only dissenting from the position of the chancellor that the intention to keep up the charge must be *immediately* and duly declared, and holding that the party should have a reasonable time within which to elect. (*See Mills* v. *Comstock*, 5 *John. Ch. Rep.* 214; *Gardner* v. *Astor*, 3 *Id.* 53; *Parry* v. *Wright*, 1 *Sim. & Stuart*, 369; *Lord Compton* v. *Oxenden*, 2 *Vesey, jun.*, 261; *S. C.* 4 *Bro. C. C.* 397.) There were no intervening incumbrances to prevent a merger in this case, and it was a matter of indifference to Leitch whether the merger took place or not. And it does not appear that the interest of any person, existing at the time when Leitch became

Clift *v.* White.

the purchaser of the premises at the master's sale, would have been advanced by keeping the mortgage on foot. An intention to keep the mortgage in existence cannot then be presumed from the situation of the property, or the situation or interest of the parties concerned. Whether Leitch by his acts manifested an intent to prevent a merger and keep the mortgage on foot as a distinct and specific lien upon the premises, will be examined in another connection. There can be no doubt, I think, that had Leitch owned the mortgage and the equity of redemption in the mortgaged premises, in his own right, the former would have merged and been extinguished in the latter, unless by some act of Leitch the interests had been kept distinct. Does then the fact that Leitch owned the mortgage as executor, and became the owner of the equity of redemption in his own right, take the case out of the general rule? It is said that in order to effect a merger by *act of law*, the estates must come to one and the same person in one and the same right; (2 *Black. Com.* 177;) comparing it to a union of estates in the same person in different rights by *act of law*, and not speaking of a like union by the *act of the party*. In the cases put by the author, in which merger would not take place, the estates meet in the same person by the act and operation of the law, and not by the voluntary act of the party. Chancellor Kent, in his commentaries, adopts the same rule when stating under what circumstances merger takes place; (4 *Kent*, 99;) citing Blackstone's Commentaries, *ut supra*, to the point. But at page 101 he says that merger may take place even when the two estates are held by the same person in different rights, as when he holds the freehold in his own right and the term *en autre droit*. If they are held in different legal rights, there will be no merger, provided one of the estates be an accession to the other merely by the act of the law, as by marriage, by descent, by executorship or intestacy. The exception does not apply when the union of the two estates is effected by the act of the party, and the merger will in such case take place notwithstanding the two estates are held in different rights, unless such merger will prejudice creditors, infants, legatees, husbands or wives. In other words,

merger in such case will result, both at law and equity, unless there exist some beneficial interests that require to be protected, and which would be prejudiced by the merger; or unless some just intention to the contrary exist. Crabb, in his Law of Real Property, vol. 2, page 1059, § 2449, in speaking of cases like this, says, " but when the accession is by the act of the party, then there will be merger; as when a husband, owner of a term in right of his wife, purchases the reversion, the term, in this case, has been held to merge; and so when an executor, in like case, purchases the reversion," citing *Moor*, 171; 4 *Leon.* 387. Bisset, in his treatise on the Law of Estates for Life, page 190, says, " the general rule as to merger applies although one of two estates is held in trust, and the other beneficially, by the same person; or although both estates are held by the same person on the same or on different trusts. For the law does not for this purpose take any notice of trusts." The same author, at pages 192 and seq., notices the exception to the rule of the cases in which the union of the two estates is caused by the mere act of law, and at page 195 assigns the reason for the exception, to wit, that when there is an accession of an estate by the mere act of law, the party does no act amounting to a declaration of intention to become the owner of another estate. It is evident that if the decisions of courts have at all times been uniform and consistent upon this point, this distinction has not always been noticed, so that there may exist an apparent discrepancy in the cases. But if this does not account for all the discrepancy, it is probable that the existence of peculiar circumstances, in particular cases, may have led to some of the decisions apparently in conflict with the principle laid down by approved modern writers. Preston says that the general proposition that the two estates must be held by one and the same person, in the same right, in order that the doctrine of merger may be applicable is, as a general proposition, contrary to several ancient and some modern cases, and to this he cites authorities. (*Preston on Merger*, 277, 278.) After noticing and commenting upon several cases, the author, at page 285, says, " From a collective view of all the cases, the distinction really

established by them is not generally that there will not be any merger because the two estates are held in different rights, or because the freehold is held by the owner of the term in his own right, and the term *en autre droit*. It is only that the accession of one estate to another merely by the act of law, as by marriage, by descent, by executorship, intestacy, &c., will not occasion a merger of one estate in the other, when the two estates are held in different rights." Thus suggesting the distinction adopted by Chancellor Kent, between the consequences of an accession of one estate to another by act of the law and by the act of the party. And see same work, page 290. At pages 294, 5, he says, "By the accession of one estate to the other, it must be universally understood that the person in whom the two estates meet is the owner of one of these estates; and that *afterwards* another estate devolves to him by the act of law, as by descent to him, or in right of a wife or of a testator or intestate. It is under these circumstances, only, that the law allows of the exemption from merger. For as often as a person is the owner of an estate in right of a wife, and not being a freehold, or in right of a testator, and he *purchases* the immediate reversion or remainder, then with the concurrence of these other requisites, which are essential to the operation of the doctrine of merger, the estate held in another right will merge." (*And see page* 295 *and seq., and page* 209 *and seq.*) This work of Mr. Preston is said, by those competent to speak upon the subject, to be the ablest and most interesting discussion in all his works, and is every where spoken of and referred to as very high authority. The conclusion to which he has arrived, and the principles which he has deduced from the cases, and applicable to the general doctrine upon the point under consideration, are, I think, abundantly sustained, and commend themselves as reasonable and right. Sir Edward Sugden, upon substantially the same authorities, lays down the same proposition that the purchase of the fee, by an executor in his own right, shall merge a term held by him as executor, except as to creditors. (*Sugden on Vendors*, 460. *See also Williams' Ex'rs*, 403, 405; *Petersd. Abr. title Merger*; 5 *Bac. Ab.* 654 *and seq., Leases*,

*&c.; R. Wescott's case,* 2 *Coke,* 61 *b, note m.*) The rule as
now understood is that a merger will take place upon the union
of a greater and lesser estate in the same person, although they
may be held in different rights, provided the accession of one
estate to the other is by the act of the party, and he has the
right to dispose of the lesser estate under the same circum-
stances, and to the same extent, that it would take place if the
estates were held in his own right, leaving it in equity to be
determined as a question of intention, express or implied. In
this case Leitch, as executor, had as we have seen, the right to
dispose of or discharge the mortgage, and the equity of redemp-
tion was acquired by him by his own act, and was not cast upon
him by operation of law. There was therefore a merger of the
mortgage, as well in equity as at law, unless it was taken out
of the operation of the general rule and brought within some
of the known exceptions. (*Com. Dig. Chancery,* 4, *N.* 8.)
And 1st. Leitch, at the time of the acquisition of the estate by
him was not under any incapacity to elect, which would take
the case out of the general rule, as in case of infants and others,
against whom a merger will not be presumed, or rather in whose
favor and for whose benefit the two estates will in equity be
kept distinct. 2d. It does not appear that there were or are
any creditors whose rights will be prejudiced. 3. It was evi-
dently a matter of indifference to Leitch whether the merger
took place or not. His rights and interests could not be preju-
dicially affected in any way by the merger. 4. There were no
rights or interests of third persons to be prejudiced by a merger.

It only remains to examine briefly the evidence, to see if by
the acts of Leitch the charge and lien of the mortgage has been
kept alive and distinct from the estate in fee. There was no
act done at the time of the purchase, or in connection with that
transaction, indicating an intent that the merger should not be
accomplished, and it was at that time that the estates merged,
if at all. The subsequent acts of the party are only material
as giving character to that transaction. If the estate then
merged, the mortgage could not by any subsequent act of the
party be resuscitated and made valid as a mortgage. The mort-

Clift *v.* White.

gage, once extinguished by the act of the party, was lost forever. There was no *locus penitentiæ.* The act principally relied upon to take the case out of the rule, is the sale by Leitch of the premises now owned by the plaintiffs, to Lawrence, subject to the mortgage. Lawrence contracted for the premises in March, 1841, but it does not appear that the mortgage was then mentioned. The deed was executed and delivered February 26th, 1842, and the conveyance was made subject to this mortgage, in terms, and the amount charged upon the premises as a part of the purchase money. The most that this shows is that Leitch may have been then ignorant of the merger by act of law, and supposed that the mortgage was still a valid security. But the form of the transaction was of but little consequence. The land was either chargeable with the payment, or Leitch was liable by reason of his act in extinguishing it and by the purchase of the equity of redemption, and it was a matter of indifference whether Lawrence should pay the whole purchase money to Leitch in his own right, and he (Leitch) should account to the estate for the mortgage debt discharged by his act, or whether Lawrence should pay that claim to the estate and the residue of the purchase money to Leitch. The result to all parties was the same. The estate of Kellogg had this claim, and whether it was called in the deed a mortgage debt, *eo nomine,* or the amount to be paid was merely specified without defining the particular character of the claim, could not affect the transaction. To give the transaction the form it took, might simplify the settlement of Leitch with the estate, and enable him more easily to distribute the residue of the purchase money among the creditors of Freeman, if such was his intent. And Lawrence would be estopped by his deed from disputing the claim and lien of the executors of Kellogg for the $2500 and interest. Other acts of Leitch are as significant of an intent to merge the charge in the estate in fee as this is, upon any construction, to keep them distinct. By four several deeds, dated respectively April 1, 1841, January 1, 1842, May 5, 1842, and January 23, 1845, he conveyed portions of the mortgaged premises with covenants of warranty, without mention of the mortgage, which,

within the case of *Mills* v. *Comstock*, (5 *John. Ch. Rep.* 214,)
and the opinion of Woodworth, J. in *James* v. *Morey*, (2 *Cowen*,
286,) extinguished the mortgage *pro tanto*, and tends to rebut
all presumption of an intent to keep alive the mortgage for any
purpose. If the acts of the party are only to be resorted to as
evidence of the intent of the mortgagee at the time of the ac-
quisition of the title by him, all the conveyances indicate an
absence of intent to prevent a merger, and simply manifest a
desire to secure to Kellogg's estate, upon 123 acres, the pay-
ment of the debt which had before been secured upon 280 acres.
The consideration of that transaction was the conveyance of the
123 acres by Leitch to Lawrence. The terms of sale upon the
foreclosure of the Lawrence mortgage necessarily followed the
terms of the mortgage foreclosed, and were moreover the act of
a third party, and so give no additional light to the transaction.
It does not appear that the master's deed followed the terms of
sale. The assignment of the mortgage, by the executors to
Wilkinson, may be evidence of what they then supposed their
rights to be, but can hardly be of much importance in determin-
ing the intent of Leitch in the transaction by which he acquired
the title to the premises. It is an act in respect to the disputed
charge by and through which the defendant claims title, and
cannot avail to make that a valid charge which before, or in the
hands of the assignor, was no charge. The assignee took no
greater or better title than the assignor had. The act of assign-
ment could not give vitality to the mortgage, if it had ceased to
exist. Other circumstances were referred to upon. the argu-
ment, but all have been so elaborately considered by the learned
referee, that I do not deem it necessary further to consider this
branch of the case. I am of the opinion that there was nothing
in the case to prevent the operation of the doctrine of merger.
This conclusion I think is in strict accordance with established
legal and equitable principles, and perfectly consistent with the
real equities of the parties. The parties must be supposed to
understand the legal effect of the acts of those concerned, and
the plaintiff upon finding such a union of estates as would
create a merger, and legally extinguish the mortgage, had a

right, without notice that such merger had not taken place, or of any circumstances casting a doubt upon it, to rely upon the legal evidence of the merger. The record of the assignment of the mortgage was not notice to the plaintiffs. They did not claim under the mortgage. (*New-York Life Ins. and Trust Co.* v. *Smith, 2 Barb. Ch. Rep.* 82.) They were guilty of no laches in not looking for an assignment of an extinguished mortgage. The assignees of the mortgage satisfied themselves with taking an admission of the validity of the mortgage from a person who for a long time had ceased to be liable for its payment, or to have any interest in the mortgaged premises. If the mortgage may be enforced, the plaintiffs are without redress, except against Leitch, who has become insolvent. If the mortgage is invalid, the defendant has a perfect remedy upon the estate of Kellogg. So that the controversy is in effect between the representatives of Daniel Kellogg, of whom Mr. Leitch is one, and the grantees of Leitch; and the question is, which shall suffer by the act of Leitch. If Leitch, by a lawful act, has discharged the mortgage, he should account to the estate, and the mortgage should not be revived to the prejudice of an innocent third person.

The judgment must be affirmed, with costs.

[ONEIDA GENERAL TERM, JANUARY 3, 1853. *W. F. Allen, Hubbard* and *Pratt*, Justices.]