## MARY E. JAQUESS *v.* THE BOARD OF COMMISSIONERS OF HAMILTON COUNTY, AND OTHERS.

1. Where the husband, at the time of the marriage, has merely an equity of redemption, after condition broken, in real estate, it is not subject to his widow's dower, unless it continued in his possession at the time of his death.

2. Where, in such a case, a decree was obtained, after marriage, against the husband alone, the wife not being a party to the proceedings, for foreclosure and sale, but no sale was in fact made, and the decree is afterward assigned to a person advancing the money due on account of it, who subsequently advanced other moneys, and took from the husband a mortgage on the premises to secure both advances, both amounts being included in one note for the principal sum, and two notes given for interest at the rate of ten per cent. per annum, this is not a merger or extinguishment of the original decree, so as to confer upon the husband the seizin of the legal estate, and so entitle his widow to dower.

3. Subsequent proceedings in chancery, to enforce the lien of a judgment, marshal liens, and effect a sale for the payment of incumbrances, resulting in a sale, the proceeds being more than sufficient to pay the original decree, vests in the purchaser, being the mortgagee, an estate in which the widow is not entitled to dower.

SPECIAL TERM.—This was a petition, filed July 23, 1855, for the assignment of dower in certain real estate in Cincinnati, of which the defendants, the commissioners of Hamilton county, were seized in fee simple.

The material facts were agreed upon as follows:

The plaintiff and John Jaquess intermarried on the 11th day of April, 1848. The husband died the 29th of April, 1855. The directors of the Commercial Bank of Cincinnati conveyed the land in controversy to John Jaquess the 1st of February, 1844, and took from him a mortgage to secure the unpaid purchase-money. In 1849 they obtained a decree against him foreclosing the mortgage, and ordering a sale of the premises. The amount of the decree was $1,961 71.

John Jaquess mortgaged the land to William Thompson, May 16, 1848, to secure an advance of $1,050, payable in six months, and the wife did not join.

In October, 1848, the Ohio Life Insurance and Trust Company obtained a judgment against Jaquess for $335 97 and costs. In June, 1849, Thompson paid this judgment, and took an assignment of it. In October, 1849, Thompson loaned to Jaquess the amount due to the Commercial Bank, and took an assignment of the decree. On the same day, Thompson made a further loan to Jaquess, who gave his note to Thompson for the whole amount now due, exclusive of the mortgage of May 16, 1848, and interest notes upon the same at six and twelve months, at the rate of ten per cent. per annum, and to secure their payment, executed and delivered to him a mortgage upon the premises, in which the plaintiff did not join.

At the January term, 1850, of the commercial court of Cincinnati, Jethro Mitchell, a judgment creditor of John Jaquess, who had levied an execution upon the same premises, filed his bill in chancery to marshal the liens and sell the lands, to which Jaquess, Thompson, and others in interest, but not the plaintiff, were made parties defendant. Thompson set up, in his answer, all his claims, as above stated, and claiming that he held the decree of the Commercial Bank, and the judgment of the Ohio Life Insurance and Trust Company, as collateral securities. On July 23, 1851, a decree was rendered finding the amount due to Thompson on his two mortgages, and the amounts due to Mitchell, and, in default of payment, ordering a sale. The property was sold under this decree, and purchased by Thompson, to whom the sheriff conveyed after confirmation. The proceeds of the sale were sufficient to pay costs, the amount due to Thompson, and a portion of the amount found due to Mitchell. Thompson and wife afterward conveyed to the commissioners of Hamilton county.

*Geo. H. Pendleton,* for plaintiff.

*Ferguson & Long,* for the county commissioners.

*Tilden, Rairden & Curwen,* for Wm. Thompson.

GHOLSON, J. This is an action brought on a claim for dower, in a lot of land in this city. The right to dower is regulated by statute, and to that statute we must look to ascertain in what cases the right exists. There are two classes of cases: First, where the husband was seized of lands, tenements, or real estate, as an estate of inheritance, at any time during the coverture. Second, where the husband had, at the time of his decease, any right, title, or interest, in any lands or tenements, held by bond, article, lease, or other evidence of claim.

If a man, before his marriage, be seized of a lot of land, and conveys it, by a deed of mortgage, to secure a debt, and the debt be not paid at the time provided in the defeasance, does the title, or interest remaining in him, upon his marriage, and subsequent decease, his wife surviving, fall within the first or second class? Would the widow be entitled to claim one-third of an estate of inheritance in the lot of land for her life, or one-third of a right or interest, commonly known as an equity of redemption?

This question is answered by an express decision of the Supreme Court of Ohio, 15 Ohio, 671, *Rands* v. *Kendall.* The principle established by that case is, that as between the parties to a mortgage, and those claiming under them, the deed, after condition broken becomes absolute, and the legal title to the property conveyed is vested in the mortgagee. The mortgagor, afterward marrying, has not an estate of inheritance, in which dower may be demanded, but only an equity, the equity of redemption; and this equity must continue in the husband at the time of his death. The court, in the same case, say: " Having but an equity, he could transfer it by his own deed, and thereby defeat his wife of dower."

If we look out of the statute, at the rules of common law, they do certainly sustain, as shown by high authority, the decision of the Supreme Court.

In the case of 12 Peters, 201, *Stelle* v. *Carroll*, it was held that, " according to the principles of the common law, a widow was not dowable in her husband's equity of redemption, and

if a man mortgages in fee, before marriage, and dies without redeeming the mortgage, his widow is not entitled to dower."

In the case of 13 Peters, 294–299, *Van Ness* v. *Hyatt*, the principles of the common law, on this point, were distinctly stated, and the ground of those modern decisions, in this country, holding a contrary doctrine, explained. It was said they had, by a gradual progress, adopted the rules of a court of equity in relation to mortgages, and considered the mortgagor, except as against the mortgagee, while in possession, and before foreclosure, as the real owner, and even as against the mortgagee, having the right of possession. See, also, 26 Wend., 555; 8 Mees. & Welsb., 559.

In New York, and perhaps in other States, where it has been held that a wife has a right to be endowed of an equity of redemption, it will be observed that they have no similar statute to ours, securing a conditional right of dower in equitable interests; 10 Paige, 49, *Bell* v. *Mayor, etc., of N Y.*

With us it becomes a question of construction. We look at the classes of cases provided in the statute, and the words used. It is the law, I believe, in some of the States, that a wife has no right of dower where the husband has alienated the property in his lifetime. Our law has drawn a distinction, in that respect, between estates of inheritance of which a husband was seized, or, in other words, legal estates, and rights, titles and interests which do not amount to a legal estate of inheritance. Our Supreme Court has held, and, it appears, upon good reason, that an equity of redemption falls within the latter class. It may be, that for many purposes, as said in the case of 6 Hill, 68, *Arnot* v. *Post*, an equity of redemption has become the legal estate: but, as there said, it is still called an equity, and in a statute which distinguishes between, and provides for, both legal estates and equities, it can not be deemed out of place among the latter.

At the same time, were a question to arise, as it appears to have done in some cases, whether, under a general devise of "all real estate," an interest held as a mortgagee not in possession, would pass as part of the real estate of the testator,

I think it not unlikely the Supreme Court would hold that it did not, and that, by such an expression, a testator intended those estates, "which are equitably, as well as legally, his own." 8 Mees. & Welsb., 559.

It is sufficient for me, however, that the Supreme Court has *decided* the question stated, and the remarks which have been made were intended to show that the principle in *Rands* v. *Kendall,* is not to be confined to cases falling within the circumstances of that case, but applies, generally, to establish a rule in construing the statute relating to dower. The case in 18 Ohio, 567, *Taylor* v. *Fowler,* in no respect impugns or questions the authority of *Rands* v. *Kendall.* In one, the husband was seized of an estate of inheritance, and the wife united in a mortgage; the point decided was that a satisfaction of the mortgage, otherwise than by a proceeding of foreclosure, to which the wife was a party, remitted her to her right of dower. In the other, the point was that the husband was never seized of a legal estate of inheritance during coverture, and, of course, there was no right of dower to which the wife could be remitted, by a satisfaction of the mortgage. The very act, and the consideration of satisfying the mortgage, destroyed the claim of the husband to the legal estate, and prevented any seizin of such an estate during the coverture.

Having stated the principles which, I suppose, must guide me in the decision of the present case, the first inquiry upon the facts, is whether the husband of the plaintiff was seized during the coverture of a legal estate of inheritance in the lot of land, of which dower is claimed? At the time of the marriage there was a mortgage deed for a considerable portion of the purchase-money, the condition of which had been broken. The husband, then, at the time of the marriage, had only an equity of redemption. Did he afterward, at any time during the coverture, become seized of the legal estate? It is his seizin which is necessary to give the wife a right of dower.

Upon the mortgage for the purchase-money, a decree was obtained against the husband, the wife not being a party in

the proceedings.  No sale was made under that decree.  The defendant, Thompson, advanced the money to pay the claim of the original mortgagee, and took an assignment of the decree.  He, also, at a subsequent time, having advanced other moneys, took from the husband a mortgage on the lot to secure them, embracing also the money advanced to pay the claim under the decree.  This took place after the marriage of the plaintiff, and she did not unite in the mortgage. The amount of the advances was included in one note, and two other notes were given for the interest at ten per cent., and all the notes were secured by the mortgage.

The counsel for the plaintiff contends that this arrangement had the effect to vest in the husband a legal seizin, by canceling and satisfying the decree which had been assigned to Thompson.  This effect can not be deduced from the doctrine of a merger of estates or rights.  No greater and less estate coincided and met in one and the same person; nor was the person bound to pay, also entitled to receive; 2 Black. Com. 177; 15 Barb. 75.  Besides, it was the interest of Thompson to keep the incumbrance on foot (to avoid this very claim of dower), and such interest has been held to be sufficient to prevent a merger.  15 Barb. 76; 6 Johns. Ch. 393; 18 Ves. 384; 34 Maine 50; 11 Eng. Law and Eq. 317; 10 S and Mar. 120; 1 Watts and Serg. 485; 1 Barbour S. C. 271.

I do not know whether it be claimed that a merger or extinguishment of the claim secured by the decree, resulted on the principle of taking a higher security.  The money due on the decree was advanced by Thompson, and he took an assignment of the decree as security.  Neither that decree, nor the mortgage for the purchase money of the lot, to foreclose which the decree was entered, have been, so far as appears from any fact stated in this case, canceled or satisfied on the record, or otherwise, by any direct act of the parties. Where a claim is secured by a mortgage, the embracing the same claim with others in a note and subsequent mortgage, does not appear to be taking a higher security; it is, at most, only one of equal dignity.

It may be that, in this case, if the last note and mortgage has been accepted in satisfaction and discharge of the former claim, there would be a sufficient consideration to support the agreement, and the effect have been the same as an actual payment of the decree. But the facts do not show any such agreement or intention. There is nothing stated from which it can be inferred that the idea of paying the decree, otherwise than by ultimately paying the debt, or, as distinguished from a payment of the debt, was in the mind of the parties.

It is stated in 10 S. and M. 120, *Louis* v. *Starke*, that, " as a general rule, a mere change in the form of the indebtedness will not operate to discharge a lien given to secure a debt, unless it is apparent that the parties intended to extinguish the lien." So far from such intent being apparent in this case, there are reasons to suppose that the parties were influenced by very different considerations, among which, I think, an additional rate of interest is prominent.

It remains to consider the effect of the proceedings in the commercial court, and the sale under the decree of that court. The original mortgage for the purchase-money, and the decree, were set up by Thompson in the proceedings in the commercial court, as a collateral security in his hands for the payment of the debt due to him from Jaquess, the husband of the plaintiff. The decree does not find or notice that claim of Thompson—but it does not reject it—and gives him all he asks in another form. It is admitted that, if the sale had been on the original mortgage for the purchase-money, executed before coverture, the wife would have no claim to dower, though no party to the proceedings. If that mortgage existed up to the time of sale, and then the equity of redemption, or all the interest of the husband was sold, when and how did he become seized of an estate of inheritance in the property?

If the sale under the order of the commercial court was, substantially, under and for the purpose of satisfying all liens and claims held by the parties before the court, then the

legal title, accompanying the mortgage on which a decree had been entered, and also the equity of redemption, passed to the purchaser. But if it were otherwise, and only the equity of redemption was sold, it is difficult to conceive how any disposition of the purchase-money gave Jaquess a legal estate of inheritance in the property, and, without this legal estate, there can be no right of dower, for it is not disputed that his equity of redemption was disposed of and conveyed before his decease. The most that could be claimed, in this view of the case, would be that there was an error in the decree. If the court only intended to sell, and did, in fact, only sell the equity of redemption, subject to the decree on the first mortgage, then, instead of paying that mortgage out of the purchase-money arising from the sale, that part of the proceeds of the sale should have been paid to Jaquess, leaving the amount as a charge on the land.

If Jaquess, previous to the sale under the decree in the commercial court, had not become vested with the legal estate, I think it entirely clear that the sale and subsequent proceedings in that court had no such effect. The only question, it appears to me, in this case, assuming the correctness of the principle in *Rands* v. *Kendall*, is whether the first lien was merged or extinguished? I think it was not, and that, therefore, the husband was never seized of an estate of inheritance during the coverture. The equity of redemption having been disposed of before the decease of the husband, it follows that the plaintiff is not entitled to dower, and there will be a judgment for the defendant.