(39 Misc. Rep. 169.)

NEW YORK PUBLIC LIBRARY et al. v. TILDEN et al.

BIGELOW et al. v. SAME.

(Supreme Court, Special Term, New York County. November, 1902.)

1. MARSHALING ASSETS—DOUBLY SECURED CREDITOR.
　　A debtor agreed that a particular creditor should have a lien upon two funds,—one of personal and the other of real property. *Held*, that payment should be made to such doubly secured creditor one-half from
　　79 N.Y.S.—11

each fund, where other claims against the personalty, upon which the singly secured creditors have no lien, would exhaust the fund.

2. ASSIGNMENT TO TRUSTEES—VALIDITY.

Where a failing debtor conveys all of his property to trustees under their separate agreements to reconvey on request, and to use the income and the proceeds of any sale to support him and his family and pay his debts, the conveyance is void.

3. SAME—SUBROGATION OF TRUSTEES.

Where a conveyance by a failing debtor to trustees is void, but the trustees subsequently raised money on their own notes, and, in reliance on the assignment, paid a percentage of his just debts, they were entitled to reimbursement as against subsequent liens, and were subrogated to the rights of the creditors in the funds representing the estate whose debts they have paid.

4. SAME—RIGHTS OF CREDITORS.

Where an assignment to trustees to pay debts was void, and a creditor, with knowledge thereof, accepted and retained a dividend to release the trustee, and thereafter procured from the assignor his notes and security · for the balance of the claim unpaid, and enters judgment by confession, he cannot enforce it against the funds representing the assignor's estate.

5. ACADEMIC QUESTIONS—DETERMINATION.

Where, under a decision of the court in regard to the disposition of the fund in the hands of the trustees, it has been exhausted, the court will not determine the rights of other claimants to such fund.

Action by John Bigelow and others, executors of the will of Samuel J. Tilden, deceased, against George H. Tilden and others. Proceedings by the New York Public Library and others against George H. Tilden and others. Motion to confirm referee's report. Report confirmed.

Countryman, Du Bois & Bevans (Pierre E. Du Bois, of counsel), for George H. Tilden, Samuel J. Tilden, William A. Whittlesey, and Edward T. Slocum.

Carter & Ledyard, for plaintiffs in both actions.

William B. McNiece (Louis S. Phillips, of counsel), for Adelaide E. T. Buchanan.

E. D. De Lameter, for National Hudson River Bank.

Cadman & Peck, for Clark and another, claimants.

Alexander & Green (William L. Kitchel, of counsel), for Mercantile Safe Deposit Co.

Frank Cochrane, for Paine and another, claimants.

Barent W. Stryker, in pro. per.

P. D. Bell, for National Mahaiwe Bank of Great Barrington.

FITZGERALD, J. As now presented to the court, this is a motion for the confirmation of the report of a referee, ascertaining and stating the unsatisfied liens and claims upon the undivided shares of the defendant George H. Tilden both in the proceeds of the real property sold in the first above-entitled action of partition, and of the personal property affected by the second above-entitled action, for the construction of the will by which those funds of personal property were created, and for an accounting therefor. The report further, in accordance with the directions of the order of reference,

¶ 2. See Fraudulent Conveyances, vol. 24, Cent. Dig. §§ 361, 363.

declares the rights, priorities, and equities of the owners of said unsatisfied liens and claims, as between themselves, and as against the above-named defendants, and determines the validity of the various claims and assignments existing against the interests of all of said defendants, and the rights, priorities, and equities created by and arising under said claims and assignments. There remained on deposit in this court, subject to its further order in the proceeding in which the said report was made, the sum of $26,175.05, as the amount of the share of the defendant George H. Tilden of the proceeds of the sale of said real property, and the further sum of $11,563.77 as his share of the said funds of personal property. Against the former many liens, evidenced by judgments,—much greater than the amount of said share,—were asserted. Against the latter, also, many claims, by way of assignment and otherwise, much greater than the amount of said share, were sought to be enforced. The rights and equities arising from, and the priorities of, said liens and claims were considered and found by the referee, and an application of the said shares to the payment thereof was made by him accordingly. To these reported findings and application many detailed exceptions were filed by different claimants, which created the issues now presented to the court for determination, and which will hereinafter be briefly treated.

The first question presented by the report and the exceptions thereto is that of the correctness, in law, of the apportionment by the referee of the payment of the undisputed and admittedly prior claim of the Tilden trust for $13,540 equally by and between and against the said shares of said realty and personalty; one-half of said claim being chargeable against, and payable from and out of, each share. The said claim being secured both by mortgage upon the interest of said defendant in the said realty, and by an assignment of his interest in the said personalty, and the claimant therefore having recourse to the two shares for the payment of its claim, it is contended by those claimants holding liens only against the said defendant's share of the proceeds of the realty that this apportionment by the referee is unjust and erroneous, and that, under the equitable doctrine of the marshaling of assets, the said claimant should have been compelled, in obtaining payment of its claim, to resort first to the defendant's share of the said personalty. It is evident, however, that upon this point the referee's findings are correct, for the following reasons: The admittedly correct and prior claim of the said claimant arose from its loan to the said defendant of the sum of $10,000, evidenced by the bond of the latter. As collateral security for the payment of said bond, the said defendant simultaneously executed and delivered to said claimant a mortgage upon his interest in all of the realty involved in the first above-entitled action, and an assignment of his interest in all the personalty of the testator, a portion of whose will was construed in the second above-entitled action. While neither the defendant nor his wife testified upon this point, yet the terms of the instruments in question, and the physical fact of simultaneous execution and delivery thereof, indicate that it was the intention of the parties thereto that the defendant's indebtedness to the said claimant should be secured equally by his share in the said realty

and by his share in the said personalty, and that the claimant should have the right to insist upon payment from either or both of said funds. That such was the intention of the claimant, at least, is distinctly testified to by its attorney; and, consistent therewith, a lien was claimed by said claimant, throughout all the proceedings herein, as against either or both of said shares, although each was more than sufficient to pay and satisfy the full amount of said claim and interest. The debt, so far as it is possible to judge from the words and acts of the parties, being intended to be equally secured by the said shares, it is proper that, in the distribution of the latter, it should be chargeable against and payable from them equally, unless equity should require otherwise. In considering the existence of such a requirement here, it is conceded that the equitable doctrine of the marshaling of assets invoked by the creditors having a lien only upon one of the said shares of the defendant would be applied as against the prior and doubly secured claimant, if there were no other claims against the defendant's share of the personalty, to which the singly secured claimant insists that the doubly secured creditors should first resort. But there were other such claims against the said share of the personalty. The referee finds there were three,—those of Whittlesey and Slocum, as trustees, National Hudson River Bank, and Stryker, the two former of which he allows. While these claims existed and were enforceable against the share of the personalty, to compel a creditor secured by both shares, at the instance of a claimant having a lien only against the share of the realty, to resort first and entirely to the share of the personalty, would, in effect, be preferring one class of claimants at the expense of the other, for which purpose the rule will not be applied. 14 Am. & Eng. Enc. Law, p. 685. Both shares having been deposited in court, they will be distributed according to equity. The rights, equities, and priorities of all of the claimants as between themselves, as against both funds, were submitted to, and had to be considered by, the referee; and he has correctly held that equity does not require or permit the application of the fund of the owners of claims against the share of the personalty to the payment of a prior debt which is a lien against both shares, in order that the lien of a claimant against the share of the realty may be thereby the more fully satisfied. To overcome the effect of this equitable rule, the claimant Mrs. Buchanan, having a lien against the realty, contends that the claimant Stryker and the National Bank of Hudson cannot be heard to complain of the marshaling of the assets for her benefit—First, because their mortgages, covering both shares, being taken subsequent to her lien, they took their securities with constructive notice of the prior liens on both funds, and of the equities, including that sought to be herein enforced, of prior lienors; and, secondly, because they gave no valuable consideration for their securities. This contention, it will be noticed, overlooks the claim of Whittlesey and Slocum, as trustees, which, as allowed by the referee, is alone sufficient to consume the share of the personalty. The lien of Stryker, as hereinafter more fully stated, was properly disallowed, and, with respect to the said contention of the claimant Buchanan, need not be considered here.

So far as the defendant's share of the proceeds of the sale of the realty in Kings county is concerned, it is evident that the bank's lien, by reason of its assignment and mortgage on May 17, 1898, is prior, and not subsequent, to that acquired by the claimant Buchanan by the docket of her judgment against the defendant in that county on February 1, 1899; and the record shows that the bank did advance an additional $1,000 on the security of the mortgage delivered to it by the defendant. For these reasons, the exceptions to that portion of the report of the referee apportioning the claim of the Tilden trust equally to the shares of the realty and personalty, and directing its payment equally therefrom, should be overruled, and the findings of the report thereon confirmed.

The exception most vigorously urged to the findings of the report establishing the validity and declaring the priority and equity of the lien of Slocum, as the trustee of the sisters of said defendant, against the proceeds of his share of the real estate, arising under the assignment to said trustee of a judgment recovered by Samuel J. Tilden against said defendant, and entered and docketed May 18, 1895, because this lien is admittedly prior in time to all others, and because its allowance by the referee entirely exhausts the said share of the proceeds of the sale of the realty now on deposit. The original judgment was recovered prior to the acquisition of the liens of the contesting creditors, after a sharply contested litigation, and, with the costs and interest, amounted to $40,651.75; and it was duly docketed in the counties in which the real property was situated, the proceeds of which formed one of the funds in this action. Neither this judgment, nor the lien thereof, as it existed June 7, 1897, for the amount actually due thereon, was attacked before the referee. Many years before the entry of this judgment, before the accrual of the claim upon which it is founded, and before the acquisition of any claim by any other creditor, the judgment creditor had entered into an agreement with his sisters for the manufacture and sale of certain medicinal preparations of which they were the owners; and for the enforcement of their rights, and the collection of their royalties thereunder, the sisters then appointed one Slocum as their agent and trustee. Immediately previous to or about the time of the assignment of the judgment in question, and of the adjustment of the rights of the said defendants and their sisters, there was owing to the latter from the said judgment creditor, for accrued and unpaid royalties, the sum of $10,542.95; the royalties for the balance of the term of the agreement, estimated on the basis of those already accrued, and discounted as of June 9, 1897, were valued by the parties at $26,-719.50; making the value of the contract to the said sisters on the last-named date the sum of $37,262.45, without reference to the value of the option for an extension of the period of the agreement, which was subsequently computed to be worth $18,135. After the entry of Samuel's judgment, the claimant Buchanan also recovered a judgment against George H. Tilden, which was docketed in New York, and subsequently in Westchester and Kings counties. The said defendant and judgment debtor, being unable to overcome his financial difficulties, as indicated by the said judgments and other judg-

ments and levies against him, executed a trust deed or assignment of all his real and personal property, including all his right, title, and interest in and to the estate of the testator herein, to two trustees, one of whom was the said Slocum. This deed was treated and insisted upon by the said debtor and his trustees as a valid conveyance between the parties thereto. After the entry of Samuel's judgment against George H., the latter had acquired, by assignment from his father-in-law, a judgment against Samuel, which was then standing as security only. It being the desire of Samuel and of the sisters to secure a . payment, satisfaction, and release of the claims of the latter against the former under the agreement for royalties, and it being the wish and hope of all the relatives, the agent for the sisters, and the trustees of the said defendant to overcome the financial conditions of the latter, a basis of settlement was determined upon, a computation of their respective rights was made by the representatives of the parties, and agreements embodying their conclusions were executed. By these agreements, in accordance with the settlement on which they were founded and to which they referred, Samuel agreed to assign to the said Slocum, trustee for the sisters, his judgment against George, and his interest in one medicinal preparation and trade-mark. He acquired in return the continued right to manufacture the other preparations, received a release and discharge from all his indebtedness and liabilities due and to become due under the original agreements, and was granted the option of the sole and exclusive right to manufacture and sell the said preparations for a renewed period at a reduced rate. Against the amount of Samuel's judgment against George was offset the amount of the latter's judgment against the former, with the result that a balance was found to be due on the judgment of Samuel of $24,885.69. Samuel, in accordance with these agreements, assigned his judgment against George to said Slocum; and the latter, a few days after, made and acknowledged a declaration of trust, reciting the agreement of settlement, the assignment of the judgment and trade-mark; declaring that the said assignments were made to him in trust for the sisters and their legal representatives "from motives of convenience"; stating that the consideration for said assignments was the release and discharge of Samuel's liability under the original agreement for royalties; referring to the offset of the judgment held by George against Samuel, with the result that the above-stated balance was found due on the latter judgment; admitting that he holds the said judgment and trade-mark as trustee for the sisters; promising that he will use all means to collect the amount thereof, and will pay the net value of the same to the parties entitled thereto.

It is under this said assignment of the judgment that the said claimant Slocum, as trustee, made the claim against the share of the defendant George H. Tilden in the realty, which has been allowed by the referee. The allowance of the said claim is now contested on the ground that the assignment of the judgment, and the agreements in accordance with which it was made, were collusive and fraudulent against subsequent claimants, and were intended to hinder, delay, and defraud creditors; that at the time of the assign-

ment the sum of $24,885.69 was not due on said judgment; that by said assignment the lien of said judgment was lost as against the said defendant's realty, was, both in fact and in law, merged in the real estate which had been previously conveyed by the said defendant to his trustees, and was thereby, with the lien thereof, in fact, in law, and in equity, paid, satisfied, and discharged. It was evidently the contention of the lienors, subsequent in time to the original judgment, that the purpose of its assignment was not only to obtain the discharge of the large claim against the defendant George H. Tilden, but to offer it as collateral security for the amount of a loan of money to settle with his creditors; that it was acquired solely and exclusively for the benefit of said debtor; and that it was asserted as a lien only when Mrs. Buchanan's lien was finally sustained by the courts. This contention finds some support in the social and legal relations between the parties, in the fact that some of the instruments were not recorded or otherwise published at the time of their execution, and in fragments of the testimony of the trustee, Whittlesey, "that the judgment was valuable to secure money with which to settle with George's creditors"; that he told the sisters "that the judgment would be held by Judge Slocum as security for their indorsement," and of the testimony of Samuel J. Tilden that they told him they wanted the judgment to use it as collateral to raise some money to take care of his brother's indebtedness, or to raise some money to straighten out his affairs. Notwithstanding these facts and the inferences to be derived therefrom, it is difficult to see what other conclusion could have been arrived at by the referee. Certainly, the question of fact having been submitted to him, and his findings having been made thereon, it is evident, after a perusal of the testimony and exhibits, that the said findings are not contrary to or against the weight of evidence, and that they should not be overruled. It is true, as frankly stated by Judge Slocum, and as is indicated by all the negotiations and the instruments through which their conclusions were finally expressed, that one of the purposes of the many transactions between the parties was the favorable settlement of the complicated financial affairs of the debtor and defendant, George H. Tilden; but that was only a purpose incidental to the general settlement of all of the affairs of the family and relatives, which were much complicated, and in some cases litigated, at the time. The evidence does not warrant a decision by this court, contrary to the findings of the referee, that there was any collusion between the parties to the said transactions and agreements. It is obvious that throughout all of their negotiations their interests were opposite, and each was mindful and insistent upon the protection and enforcement of the same. The nature and extent of their mutual rights and liabilities were carefully ascertained, deliberately computed, and strictly enforced. Whatever the hopes and wishes of the sisters with respect to the use of their judgment, when acquired, in helping to straighten the financial affairs of their brother, it is evident they could not fulfill these hopes and wishes by securing the acceptance of that judgment as collateral, but it was not the sole and exclusive reason of their acceptance of the judgment through the

medium of an assignment to their trustee. Whatever the use which they intended to make of it, they accepted it in partial satisfaction and discharge of their rights under the agreement for royalties with their brother Samuel, and parted with a full and ample consideration in fact, and a valuable consideration in law, consisting of the release of the indebtedness to them for unpaid royalties, the grant to their brother of the exclusive right to manufacture the preparations, and their acceptance of a lower rate of royalty for the renewed period of the contract. There is no significance in the evidence, and no inference to overrule the findings of the referee could be derived from the circumstance that one of the trustees for the debtor and defendant, George H. Tilden, was also the person to whom the assignment of the judgment was made, and who made the declaration of trust concerning the same. Indeed, no more proper person could have been chosen for the latter purpose, because, under the original agreement for royalties, executed long prior to the existence of the claims in question, the same person had been named as the agent of the sisters for the protection and enforcement of their rights thereunder, and as such agent he had, immediately previous to the assignment of the judgment in question, been pressing upon their debtor, Samuel, for the payment of the unpaid royalties. Nor is any significance, sufficient to overcome the findings of the referee, to be derived from the fact that the judgment of one brother was to be offset against that of the other. That was one of the matters presented to Samuel as an inducement or consideration for the assignment of his judgment to the sisters. It was an action upon which, under the circumstances, he probably would have insisted, and it is a matter of practice which is frequently sustained and sanctioned in courts of equity. If there had been any fraudulent intent or purpose on the part of the parties, it might have been easier and safer to accomplish it in many ways. The judgment of Samuel need not have been assigned at all, and, under an existing stipulation, the action in which the judgment subsequently assigned to George was rendered could have been discontinued, which would apparently leave the full amount of Samuel's judgment in force as a prior lien against the lands or interests in realty of George. In so far as the priority of Mrs. Buchanan's lien is concerned, its legal effect was not increased or diminished by the action taken with the prior judgment. Any party could purchase that judgment upon the best terms possible; and, as in this case a valuable consideration therefor was furnished, the purchase and assignment thereof should not be interfered with to the advantage of a claimant whose rights were always subordinate to the liens of the original judgment. The exception, therefore, that the said assignment of the judgment was collusive and fraudulent because made with the intent to hinder, delay, and defraud creditors, must be overruled, and the findings of the referee thereon should be confirmed.

It is clearly obvious from a consideration of the testimony and of all the circumstances surrounding the parties that, whatever the legal effect, it was not the intention of the agent and trustees of the sisters, or of the sisters themselves, that the judgment which was purchased and assigned should be merged in the real estate covered by

the deed of trust or assignment which had previously been made by the judgment debtor to his trustees, one of whom was the agent or trustee for the sisters. It is difficult to see how the contention that, as a matter of fact, the said judgment was intended to be merged in the fee, could be seriously made and maintained unless it should be based upon the hopes, wishes, and intentions of the parties to all of the transactions that, by some use to be made of the judgment, it should help to extricate from his financial difficulties the judgment debtor who had previously made conveyances of all of his estate. That there was no intention that the payment, satisfaction, or discharge of the judgment was sought to be affected by its assignment is apparent from the evidence that it was not satisfied of record; that no satisfaction piece was requested; that an assignment of the exact sum due thereon was taken; that the legal effect of the transaction was carefully stated; that the amount due thereon and the circumstances of the assignment thereof were precisely recited in a declaration of trust executed by the agent, and delivered to the beneficial owners of the judgment, namely, the sisters of the judgment debtor. In the declaration of trust the agent or trustee of the sisters specifically promises that he will use every effort to enforce and collect the judgment, and pay the proceeds thereof to the parties entitled thereto; and, consistently with that intention, he has, throughout the entire litigation in this proceeding, insisted upon the payment of the amount due on said judgment from the proceeds of the sale of the land upon which it was a lien. Again, the assignment of the judgment was promptly recorded in the various counties in which the lands were situated, and legal notice thereby given to all parties concerned that the judgment was still alive and subsisting. It is evident from the negotiations preceding the execution of the agreements, from the terms of the agreements, from the assignment itself, and the action taken thereunder, from the recitals in the declaration of the trust, and from all the surrounding facts and circumstances, that it was the intention of the parties to acquire and hold the judgment for their own benefit, as a valid and subsisting lien against the lands of the judgment debtor, whatever might have been their affectionate and benevolent hopes concerning their ability, through the use of the judgment, to raise money to straighten out the affairs of their embarrassed brother. The question of merger is one of intention of the parties, and even admitting that Slocum, as agent of the sisters, and Slocum, as one of the trustees of the defendant George Tilden, were the same person, all the attendant facts and circumstances indicate an intention to keep the judgment and its lien alive and subsisting, and should be recognized by law as operative to accomplish that purpose (Clift v. White, 15 Barb. 70; Id., 12 N. Y. 519; Franklyn v. Hayward, 61 How. Prac. 43; Sheldon v. Edwards, 35 N. Y. 279; Smith v. Roberts, 91 N. Y. 470, 475, 476; Bostwick v. Frankfield, 74 N. Y. 207), and, in the absence of any expressed intention, it will be presumed that the parties intended that which was most for their interest, and judgment will be rendered accordingly (De Lisle v. Herbs, 25 Hun, 485, 487); and an intention to keep the estate separate will ordinarily be implied, if all the cir-

cumstances show that the interest of the person in whom they have united would be best subserved by so doing (15 Am. & Eng. Enc. Law, 314). This intent has been implied, and this interest has been recognized and protected, by keeping the title distinct, where there is an intervening incumbrance. Payne v. Wilson, 74 N. Y. 348, 354. There was no obligation upon the part of the sisters or their agent, either with respect to Samuel J. Tilden, George H. Tilden, or Mrs. Buchanan, to acquire the judgment, and secure its payment, satisfaction, or discharge, by a merger in the fee of the judgment debtor's estate; and where, as in this case, no such obligation exists, the incumbrance should be, in equity, considered as subsisting if the attendant facts and circumstances, or the inferences derived therefrom, indicate that such was the intention of the parties. Champney v. Coope, 32 N. Y. 543; Bascom v. Smith, 34 N. Y. 320, 324.

Giving to the contention of the claimant Buchanan that the judgment was acquired for the sole benefit of the judgment debtor, and for the purpose of using it as collateral security for the loan of money to be used in the payment of his debts, its full force and effect, the case of Pruyne v. Manufacturing Co., 92 Hun, 214, 36 N. Y. Supp. 361, would seem to be applicable. In this case, bonds of the mortgagor corporation, having been paid by the company, were surrendered under an express agreement that they were not to be canceled, but were to be resold to raise money to conduct the business of the company. Even in this extreme case the contention of intervening judgment creditors of the company for merger of the estates was overruled. Nor is there any force in the contention of the claimants that, the judgment having been assigned to one who was the assignee or trustee under a previously executed deed of trust of all of the realty of the judgment debtor, the former lienor estate was merged in the latter. It is evident that there was no uniting of the greater and lesser estate in the same person, for, although Mr. Slocum was one of the assignees and trustees of the judgment debtor under the deed conveying all his real estate, he was but one of two; the other, Whittlesey, having no connection whatever with the negotiations and agreements for the assignment of the judgment. The judgment was assigned to Mr. Slocum, not as trustee of the judgment debtor, but of the sisters, the real owners, who paid a valuable consideration for the assignment. The interests of Mr. Slocum as agent and trustee for the judgment debtor were entirely different and distinct from his interest as agent for the sisters. Though in fact the one person, they were in law two separate and distinct persons; and certainly, in equity, the judgment must be considered to have been assigned, not to Slocum, but to the three sisters and their legal representatives, the actual and real owners thereof. It is well settled that, to accomplish a merger at law or in equity, there must be a unity of the two titles or interest in the same legal person, and that if the two titles are held in different interests, as by an individual in one right, and by the same individual in a representative capacity for a different interest, there can be no merger. 15 Am. & Eng. Enc. Law, 316, 317. Where the ownership of a claim which is a lien upon lands is united in the same person who holds the legal title to such lands as

trustee for himself and another, no merger of the lien will take place, and no adverse possession be permitted against it. Hasbrouck v. Angevine (Sup.) 1 N. Y. Supp. 789. And executors purchasing mortgage on lands of their testators can enforce the same against the heirs. Carter v. Holahan, 92 N. Y. 498. Not only must both estates be owned by the same person, but in the same right. Skeel v. Spraker, 8 Paige, 182.

It is evident, therefore, that the exceptions to the report of the referee allowing the claim of the said Slocum, as trustee for the sisters, upon the ground that the judgment, upon the assignment of which the claim is based, was merged, in fact, in law, and in equity, in the real estate previously conveyed by the judgment debtor to his trustees, should be overruled, and the findings of the referee thereon should be confirmed. It follows, therefore, that the said claim should be allowed as found and stated by the referee, and that the exceptions to the allowance thereof should be overruled.

With reference to the claim of the trustees of the judgment debtor against the personal estate under the trust deed or assignment to them of all his real and personal property, it is evident, from the authorities, that the referee properly assumed and exercised jurisdiction over the matter. The said trustees having, by agreement dated and acknowledged upon the day upon which the deed of trust was made, covenanted to reconvey to their assignor the entire estate, free from all trusts, upon the written request of the judgment debtor and his wife, and the deed of trust itself providing for the payment of income from the property and the proceeds of sales thereof to the use and benefit, the support and maintenance, of the assignor and his family, and for the payment of the indebtedness of the former, the referee properly held that the trust deed was in contravention of the statutes of this state in reference to assignments, and was void at law. He held, however, that the said trustees were entitled to protection in equity for the amount actually paid by them in good faith to the creditors of the assignors out of the moneys raised by them personally upon their note indorsed by the sisters in reliance upon the assignment; that they were thus equitably subrogated, as against the personalty thus assigned, to the claims of the creditors existing at the time, and paid by them; and that they were also entitled to reimbursement of the amounts paid out by them in preserving and maintaining the trust estate assigned to them, such as for taxes and assessments levied against the real property. Under the circumstances of the case, as disclosed by the evidence, considering the fact that there were at the time of the assignment no prior or other liens as against the personalty of the assignor; remembering that the trustees were in no way volunteers or strangers in the matter of paying the claims against their assignor, that it was their duty to pay the debts so far as the funds came into their hands for that purpose, and that it was incumbent upon them to protect the trust estate,— it must be determined that the findings of the referee, giving them credit for such payments, should be sustained, and the exceptions thereto should be overruled. As against the claim of Mrs. Buchanan that the trustees arbitrarily paid from the property, so transferred to

them, indebtedness to certain creditors subordinate in point of time to her claim, it must be remembered that she acquired at no stage of the proceedings herein any lien or title as against the personalty of her judgment debtor. The assignment has never been attacked by her until the present proceedings, and at the time of the execution thereof the assignor and the trustees thereunder were justified in believing, from the reversal of the judgment in her favor by the appellate division, that she had no claim against the estate of the assignor, and that under the deed of trust they could safely and properly make payments of the debts of their assignor then recognized as valid and subsisting. Under the authorities, they were therefore entitled to be subrogated to the rights of the creditors to the extent of the amounts paid to them, and the referee has properly allowed their claim for the amount of such payment. 24 Am. & Eng. Enc. Law, 285, 292, 294; Hill v. Beebe, 13 N. Y. 556; Snelling v. McIntyre, 6 Abb. N. C. 469; Cole v. Malcolm, 66 N. Y. 363; Patterson v. Birdsall, 64 N. Y. 294, 21 Am. Dec. 609; Clark v. Barnes, 76 N. Y. 301, 305, 32 Am. Rep. 306; Gans v. Thieme, 93 N. Y. 225, 232; Pease v. Egan, 131 N. Y. 262, 271, 30 N. E. 102.

There was some contention that the amount of the payments made by the said trustees, as allowed by the referee, was incorrectly computed. It is evident that a full and careful computation of the same was made, with which the court cannot and should not interfere. For these reasons, the exceptions of the claimants to the allowance of the claim of the trustees of the defendant George H. Tilden under his deed of trust to them, for the payments made by the said trustees thereunder, as found and allowed by the referee, should be overruled, and the findings of the report thereon should be confirmed.

With reference to the claim of Barent W. Stryker, there can be no question whatever, under the evidence proved and under the authorities, that the same was properly disallowed by the referee. The said claimant, after the acceptance of 20 per cent. of the amount of his claim from the trustees of his debtor, the defendant George H. Tilden, made and delivered a release of the same in full, accepted the said percentage, retained the amount thereof, and has never offered to repay the same. Though familiar with the facts attending the execution of the assignment, and familiar with the law applicable thereto, without the knowledge of the trustees of his debtor he obtained from the latter notes, and a bond and mortgage as security, for the balance of his claim, and upon a confession from the said judgment debtor he subsequently entered judgment; and upon the bond and mortgage, and a judgment entered upon the notes, he now makes claim against the real and personal funds herein. He was, however, properly held by the referee, after his participation in the assignment and his acceptance of moneys thereunder, to be precluded from a share of the same; and because of his subsequent secret negotiations and agreement with the debtor, the notes given to him by the latter for the balance of his claim, the bond and mortgage given to secure the same, and the judgment entered thereon, were properly held to be void at law and in equity. Cornwell v. Clement, 87 Hun, 50, 33 N. Y. Supp. 866; Groves v. Rice (Sup.) 29 N. Y. Supp. 1050; Hone

v. Henriquez, 13 Wend. 240, 27 Am. Dec. 204; Rapalee v. Stewart, 27 N. Y. 310, 314. Other claims were presented to the referee, some of which have been partially allowed, without any full and explicit statement or computation of the amount in which they should be permitted to share, because of the fact that the allowance of the claims of Slocum, as trustee for the sisters, against the realty, and of the equitable rights to subrogation of Slocum and Whittlesey, as trustees, the entire funds now on deposit are exhausted. The claims of the National Hudson River Bank were subsequent to the assignment to Whittlesey and Slocum, and their security therefor was junior and subordinate to the equitable rights acquired by the acts done under that assignment. But the funds being exhausted, it is not necessary for the court to determine the legal effect of the sale by the said bank, and its purchase and application upon the original debt of the securities pledged and hypothecated with it by the defendant George H. Tilden as collateral security. Nor need attention be given to the claim of the moving parties that the validity of the assignment by the said defendant to his trustees could not be attacked by the said claimant until the latter had exhausted his legal remedy by the recovery of a judgment, and the return of an execution thereon unsatisfied. Nor is it necessary to determine the right of said claimant to attack the report as to the personalty, or to file exceptions or to be heard in opposition to the confirmation of the report. So, also, the question as to the balance remaining due and unpaid to the claimant Clark is, under the circumstances, in view of the findings above confirmed, purely an academic one. The said claimants have not excepted to the report, and a clerical error having been made in the statement of the balance due them, and a stipulation that the same may be properly corrected having been entered into, the report, for the purpose of accuracy, may be amended in this particular.

It appearing that the referee has properly stated the nature, extent, and amount of the unsatisfied liens and claim against the shares or interests of the said defendant in both funds, and that he has properly ascertained and reported the equities, priorities, and rights of the owners of said unsatisfied liens and incumbrances as between themselves and as against said defendant, and has properly determined and reported the validity of the claims existing against the interests of said defendant, and the rights, priorities, and equities of defendant claimants arising under or by virtue of said assignments, all the exceptions to the report should be in all things overruled, and the said report should be in all things confirmed. No allowance as costs being payable to the parties unsuccessful upon the reference, and no allowance other than the referee's and stenographer's fees being asked by the successful and moving parties, it will be necessary merely to submit an order confirming the report in all things accordingly. Ordered accordingly.