Let an order be entered accordingly.

---

(82 Misc. Rep. 312.)

APPEL et al. v. BUCKBINDER.

(Supreme Court, Equity Term, Monroe County. October 20, 1913.)

1. EVIDENCE (§ 461*)—PAROL EVIDENCE—DEEDS.
   Where a father conveyed a portion of a residence tract to a son by deeds containing building restrictions, and after the father's death his heirs, including the son, conveyed all the property to a third person without restriction, and he reconveyed to the son and the other heirs, parol evidence was inadmissible to show that such conveyance was for the purpose of straightening lot lines, and not to destroy the restriction.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

2. DEEDS (§ 171*)—BUILDING RESTRICTIONS—VALIDITY.
   A deed providing that the grantee agrees not to erect on the premises any building or buildings except for residential purposes, or to reconvey the property to any person for the erection of a block for commercial business, was valid as between the parties, and binding against subsequent grantees with notice.
   [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 450, 537–542; Dec. Dig. § 171.*]

3. VENDOR AND PURCHASER (§ 231*)—CONSTRUCTIVE NOTICE—EXAMINATION OF RECORDS.
   Where a building restriction in a deed in defendant's chain of title, duly recorded, would have been discovered by a proper search of the public records, she was chargeable with notice thereof.
   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

4. DEEDS (§ 173*)—BUILDING RESTRICTIONS—BENEFIT.
   Where a father conveyed a portion of a residence tract to his son, inserting in the deed a clause that the grantee agreed not to erect any building or buildings on the premises except for residence purposes, such restriction was for the benefit of the father's remaining portion of the tract, and was therefore enforceable by the subsequent owners thereof.
   [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 543; Dec. Dig. § 173.*]

5. DEEDS (§ 175*)—BUILDING RESTRICTIONS—SUBSEQUENT CONVEYANCE.
   A father owning a tract of residence property sold two of the lots to his son, and later platted the entire tract, including the lots so sold. On

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his death his heirs, including the son, joined in a quitclaim deed conveying the entire tract to D. This deed contained no restriction, and on the same day D. reconveyed the lots previously owned by the son, and conveyed the balance of the property to the father's other heirs. According to the map made by the father, the lot lines were not at right angles with the street, and after his death the heirs replatted the tract and caused a new map to be filed by which the lot lines were straightened. *Held*, that the purpose of making the deeds to D. appeared, from the construction of the deeds themselves, to be to change the description in order to straighten the lines, and that they did not merge and terminate the restrictions contained in the father's original deed to the son.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 545, 548; Dec. Dig. § 175.*]

Suit by Mae R. Appel and another against Mary Buckbinder, for permanent injunction restraining defendant from erecting a business block in violation of a restrictive clause in a deed of her predecessor in title. Writ granted.

Reed & Shutt, of Rochester, for plaintiffs.

Henry R. Glynn, of Rochester, for defendant.

CLARKE, J. Many years prior to 1889, John Dempsey purchased about an acre of land at the corner of Monroe avenue and Shepard street in the city of Rochester, and held title to said property until February, 1889, when he sold a portion of said tract to his son Timothy B. Dempsey the parcel thus sold fronting on Monroe avenue, and being called lot 1 of the Dempsey tract, and being on the corner of Monroe avenue and Shepard street. That deed contained the following clause:

"The party of the second part hereby agrees not to erect on said described premises any building or buildings except for residential purposes or to reconvey property to any person for the purpose of erecting block for commercial business."

In July, 1889, John Dempsey conveyed to his son Timothy B. Dempsey another lot fronting on Monroe avenue, adjoining the parcel above referred to on the east, being lot 2 of the Dempsey tract, and that deed contained the following clause:

"The party of the second part agrees not to erect on said described premises any building except for residential purposes (barns allowed) or to reconvey property for any other purposes."

John Dempsey still retained the balance of his tract of land adjacent to the lots above referred to, which other land fronted on Shepard street, and in 1893 he caused a map of his entire property to be made, including lots 1 and 2 previously sold to his son Timothy, the entire property, according to that map, being divided into nine lots, including those previously sold to his son Timothy. Mr. Dempsey owned no other property in that portion of the city of Rochester, and it is plainly that it was his idea to have it used for residential purposes.

John Dempsey died intestate on the 3d day of March, 1895, and left him surviving five children, four sons, and one daughter, all of whom were of full age.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In February, 1897, the heirs of John Dempsey joined in a quitclaim deed, conveying the entire parcel of land formerly owned by their father, to Eugene J. Dwyer, and that deed included lots 1 and 2 previously sold to Timothy B. Dempsey, and he and his wife joined in that deed. On the same day Mr. Dwyer conveyed, by quitclaim deed, to Timothy B. Dempsey lots 1 and 2, which had been previously conveyed to him by his father, and lots 3, 6, and 8, with other property, and also on the same day said Dwyer, by various deeds, conveyed the balance of the property, which had thus been conveyed to him by the heirs of John Dempsey, to various other of his heirs, but in none of the deeds, either to Mr. Dwyer or from him to the heirs, was there any clause restricting the use or enjoyment of any part of the property.

[1] According to the map made by John Dempsey, above referred to, by which he laid out this land into city lots, it appeared that the lot lines were not at right angles with Shepard street, and after his death his heirs replotted said tract, and caused a map to be made and filed by which the lot lines were straightened, making them run at right angles with Shepard street. In order to do this and to divide the John Dempsey lands among his heirs, the deeds to Mr. Dwyer and from him to the heirs were made and executed, but I am clearly of the opinion, from the facts and circumstances surrounding the case and the parties at that time, that it was not their intention to do away with the restrictive clauses in the Timothy B. Dempsey deeds above referred to, for they had clearly been placed there by the owner of the entire tract for the benefit of the lands retained by him after he sold lots 1 and 2 to his son Timothy, and that the sole purpose of making the deeds to Dwyer, and he reconveying the same day to the heirs, was to straighten the lines of the lots fronting on Shepard street, and to divide the property. Plaintiff on the trial sought to show by oral testimony that that was the intention of the parties, but that evidence was excluded, and it seems to me properly so. Uihlein v. Matthews, 172 N. Y. 154, 64 N. E. 792.

It was not necessary to have oral testimony admitted to show the intention of the parties, for the two maps and the descriptions in the various deeds are quite sufficient to show that the lot lines were not at right angles with Shepard street according to the first map, and that it was desirable to have them so in a residential portion of a populous city goes without saying, and I cannot believe that the heirs of John Dempsey, owning all of his lands, excepting lots 1 and 2, which he had previously sold, would have knowingly waived the restrictions he placed in the deeds conveying these lots for the benefit of the lots remaining, and which descended to his other heirs, and that idea is strengthened by the unquestioned fact that it was the intention of all the parties to have all the lots used for residential purposes only; they being in a portion of the city at a considerable distance from any commercial buildings.

[2] The restrictions in the deeds by which John Dempsey conveyed lots 1 and 2 to his son Timothy were for the benefit of the lots adjoining and still retained by John Dempsey. They were in a residential portion of the city of Rochester, and it was his purpose to divide the

tract into lots to be sold for the erection of residences. These restrictive clauses in the deeds were perfectly valid as between the parties, and would be binding as against the defendant if still in existence and she had notice of them. Cambridge Val. Bank v. Delano, 48 N. Y. 326; Hodge v. Sloan, 107 N. Y. 244, 17 N. E. 335, 1 Am. St. Rep. 816.

[3] Defendant may not have had actual personal notice of these restrictions, but a proper search of the public records would have revealed them, and she must be deemed chargeable with notice of their existence. Whistler v. Cole, 81 Misc. Rep. 519, 143 N. Y. Supp. 478.

[4] The restrictions placed by John Dempsey in the deeds conveying lots 1 and 2 to his son Timothy were for the benefit of the remaining lots in the Dempsey tract, and were proper and legal. These plaintiffs subsequently, by various mense conveyances, became the owners of lots 5 and 6 of that tract, and they can enforce these restrictions the same as their predecessors in title could have done. Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, 37 L. R. A. (N. S.) 1, 127 Am. St. Rep. 925; 13 Cyc. 886.

[5] The learned counsel for defendant urges that, because all these lands were conveyed by deed to Eugene J. Dwyer by the heirs of John Dempsey with no mention of the restrictions in the deeds of lots 1 and 2, said restrictions merged in the higher title, and became thereby extinguished. I do not think so under the facts as established in this case, for I do not believe that was the intention of the parties when they executed the deed to Mr. Dwyer, and merger is primarily a question of intention of the parties, and will not be assumed. New York Public Library v. Tilden, 39 Misc. Rep. 169, 79 N. Y. Supp. 161; 20 Am. & Eng. Enc. of Law, (2d Ed.) 590.

This is a court of equity, and it must not permit John Dempsey's wishes with regard to his property and its use to be entirely thwarted simply because, for some reason when his heirs by various conveyances sought to partition his estate and straighten lot lines, lots 1 and 2, previously sold by him, were included, and the restrictions placed in the deeds to lots 1 and 2 for the benefit of his other lands were omitted. It could not have been the intention of all the parties to the Dwyer deed to thus extinguish restrictions which had been placed in prior deeds by their father for his and their benefit, and the intention of the parties must control. 16 Cyc. 665, 666; Curtis v. Moore, 152 N. Y. 159, 46 N. E. 168, 57 Am. St. Rep. 506.

When the deed of these various lots was made by the John Dempsey heirs to Eugene J. Dwyer, they conveyed to him different interests, and he in turn, that very day, reconveyed different interests to the different heirs. Why lots 1 and 2 were included in the deed to Dwyer does not appear, but they were included in the description, but when the father of the Dempsey heirs had placed the restrictive clauses in the deeds of lots 1 and 2, he undoubtedly had in mind the erection on all of the lots of residences only, and he provided the restrictions in the deeds for the benefit of the remaining lots to the end that the entire territory, both the lots that he conveyed and those he still retained, should be used exclusively for residential purposes, and I cannot be-

lieve that when his other heirs joined with Timothy in the deed to Mr. Dwyer, they knowingly released the very restrictions which their father had placed in the prior deeds to Timothy for the benefit of the lands which they received from him by descent, and which inured to their benefit; and, if it was not their intention to extinguish those restrictions, then a court of equity should see to it that the intentions of the original owner of all this property should be respected and enforced. While in law it might well be urged that the restrictions were extinguished by the deed to Dwyer, if that was not the intention of the parties, equity should step in and prevent a wrong being done.

On the whole evidence it must be held that the restrictive clauses in the deeds by which Timothy B. Dempsey took title from his father to lots 1 and 2 were never extinguished by the subsequent deed to Mr. Dwyer, for that was not the intention of the parties, and those restrictive clauses being part of the public records, and being shown in the abstracts of title examined by counsel for defendant before she ·purchased her property, she must be deemed chargeable with notice of their existence.

It is established that defendant is engaged in erecting a business block on lot 1, which would be in violation of the terms of the deed of one of her predecessors in title, and that the erection of such a building would seriously damage the plaintiffs who are owners of lots which are part of the remaining Dempsey tract, and in whose favor the restrictive clauses in question were inserted in the Timothy B. Dempsey deeds. These plaintiffs undoubtedly purchased their lots and erected dwellings thereon with the idea that all lots of the John Dempsey tract were to be used as he intended, for residential purposes, and defendant, being engaged in the erection of a business block in violation of the restrictions above mentioned, which have not been extinguished, and of which she is chargeable with notice, should be restrained from continuing said work to the end that justice be done to those who purchased lands in the John Dempsey tract, for whose benefit the restrictions above referred to were created.

Judgment is therefore directed in favor of the plaintiffs, and against the defendant for the relief demanded in the complaint, with costs.