SALVATORE PISANO et al., Respondents, *v.* STANLEY A. RAND et al., Appellants.

Second Department, June 17, 1968.

174

*Michael Goldberg* for appellants.

*Abraham Russ* for respondents.

SAMUEL RABIN, J. This action was brought (1) to declare a deed to certain real property in Massapequa Park, Nassau County, given by plaintiffs to defendants, to be a mortgage, and void for usury, (2) to compel a reconveyance of the property and (3) for injunctive relief. Upon the plaintiffs' motion for summary judgment, judgment was entered on June 17, 1964, declaring the instrument a mortgage and void, cancelling and discharging it of record, and severing the defendants' counterclaim to establish a lien on the property for certain monetary advances and for foreclosure of the lien.

On the motion for summary judgment, the defendants were held guilty of usury in lending money to the plaintiffs. This court approves this conclusion, as one warranted by the evidence that the defendants had advanced funds on an unlawful bonus

arrangement. There remains, however, the problem in law of whether the defendants, even if usurious lenders, are equitably entitled to subrogation for moneys paid out by them on behalf of the borrowers in the transaction, as alleged in their counterclaim.

Insofar as presently relevant, it appears that the defendants took a deed to the real property as security, for certain advances made by the defendants at the closing of title on or about October 8, 1960. These funds were used to protect the plaintiffs' ownership of their property which was in jeopardy by virtue of liens which had arisen from the aggregate of sums due on a docketed judgment, a filed Federal tax lien, and arrears on the first and second mortgages. At bar, the plaintiffs' complaint has been sustained and judgment has been awarded thereon, on the summary judgment motion, decreeing that the deed was a mortgage, and that the mortgage was usurious and void and should be cancelled of record. It appears that, under the deed, the defendants remained in possession of the premises from on or about October 8, 1960 to on or about June 17, 1964, when the summary judgment was granted to the plaintiffs, which also severed the defendants' counterclaim for separate trial. In the interim, it is uncontested that the defendants collected $3,145 in rents from the plaintiffs and another tenant, in pursuance of lease-back arrangements made with the plaintiffs at the time of closing.

On the separate trial on the counterclaim, it was found that the defendants had actually advanced $1,667.58 on the closing, though this sum was calculated by the plaintiffs, on their motion for summary judgment, as amounting to $2,263.99. It was further found that subsequent to the closing in 1960 and to 1964 the defendants paid on account of the first mortgage for interest and principal, and for additional taxes, a total of $5,183.96, plus a total of $1,521.20 on the second mortgage, an aggregate of $6,705.16. The total paid by the defendants, including the amount on the closing, was $8,372.74. On the trial, the defendants asserted that they should recover the difference between $8,372.74, the gross sum expended by them, and $3,145, the rents received, or the sum of $5,227.74. The defendants' claims, however, were wholly dismissed on the theory that since the deed was given, and lease-back arrangements were made, as security on a transaction branded as usurious, as asserted in the complaint, under section 373 of the General Business Law, in effect at the time of the transaction, no recovery on the counterclaim was allowable " once the transaction has been held usurious. "

We hold that the dismissal of the counterclaim was error and that the defendants were entitled to partial recovery thereon. Despite the plaintiffs' argument that the counterclaim for a lien was properly dismissed because subrogation, an equitable doctrine, should not be applied " to allow a usuror [*sic*] to recover for moneys expended to protect his ill-gotten gains, " the law prescribes that even a usurer may be entitled to subrogation in limited circumstances. The usurer is entitled to be subrogated to the rights of a prior encumbrancer where the usurer himself pays over the money to such encumbrancer, as distinguished from the situation where the money passes to the borrower whose agreement to apply it in discharge of the prior encumbrance is part of the illegal contract. Where he pays directly to the prior encumbrancer, though his security arrangement with the borrower is void, the usurious lender " may be subrogated to the rights of the former creditor under the valid lien " (91 C. J. S., Usury, § 87, subd. b). The reason for this result is that obligations stemming from another and independent source are not affected by the usury statute, although in origin they may trace back to a contract tainted with the vice of usury. While full effect should be given to the statutes against usury, their penalties are not to be extended to situations not within their primary intendment, especially in circumstances which would preserve the borrower's ownership of the security and at the same time confer upon him the benefit of an unjust enrichment (*Patterson* v. *Birdsall,* 64 N. Y. 294, 297–298; *Ganz* v. *Lancaster,* 169 N. Y. 357, 365; *Hawkins* v. *Maxwell,* 156 App. Div. 31, 34, affd. 215 N. Y. 673; *New York Public Library* v. *Tilden,* 39 Misc. 169, 183; *Diamond* v. *Tau Holding Corp.,* 131 Misc. 446, 451; *Di Giovanni* v. *Giliberto,* 139 Misc. 616, 622; *Catskill Nat. Bank & Trust Co.* v. *Saxe,* 175 Misc. 501, 503–504, opn. by BERGAN, J.). In *Patterson* (*supra,* pp. 298–299) it was held that a junior encumbrancer of mortgaged premises had a right to pay the mortgage and to be subrogated to the rights of the mortgagee, and that his payment was not necessarily the result of a usurious agreement made with the defendants-owners of certain premises. It was further held (p. 299) : " His rights would have been the same had that agreement not been made, and cannot be held to have been destroyed by reason of his entering into that contract. Equity will give him the same benefit of his redemption as if he had redeemed voluntarily and without having made the illegal agreement with the defendants. The act of redemption may be referred to and sustained by the right rather than the usurious agreement of the parties. * * * By paying the mortgage he

became entitled to a cession of the debt and a subrogation and substitution to all the rights and action of the mortgagee, and the mortgage must be regarded as against the mortgagors as still subsisting and unextinguished. (St. Eq. Jur., §§ 635, 1227; *Pardee* v. *Van Auken,* 3 Barb., 534; *Averill* v. *Taylor,* 4 Seld., 44; *Ellsworth* v. *Lockwood,* 42 N. Y., 89; *Jenkins* v. *The Continental Insurance Co.,* 12 How. P. R., 67.)

"The defendants have the full benefit of the laws against usury when they avoid, as they have done, the contract which was tainted with usury, and can neither in equity or good conscience, or by virtue of any provision of the statute, claim that the pre-existing obligations, free from the vice of usury, which they have not paid or in any way satisfied or discharged, should not be enforced against them."

Applying the principles inherent in the foregoing authorities to the case at bar, it is our opinion that although the deed and lease arrangements were properly held to be void as a consequence of usury, on plaintiffs' motion for summary judgment, this result did not necessarily extinguish the defendants' right to relief. Though held to be usurers on the original transaction which gave rise to the deed and lease arrangements, the defendants were entitled to the benefit of the rule that a lender's right to subrogation is not forfeited because it derives from a contract made void for usury, where his payments subsequent to the tainted contract preserve the borrower's ownership of the subject premises and would confer a benefit of unjust enrichment. At bar, this rule mandates that the defendants may have subrogation as to items, not part of the original and usurious arrangements by which they secured the deed and lease which have been voided for usury, which they later paid out themselves. Adapting the figures found by the trier of the fact, the defendants may not have recompense for the $1,667.58 found to have been paid out on the closing.

By the same token, and in pursuance of the same findings, it appears that subsequent to the closing the plaintiffs paid out the following sums: $5,183.96 on account of the first mortgage for interest and principal and for taxes, plus $1,521.20 on the second mortgage, or a total of $6,705.16. As against this latter sum, it appears that the defendants received from rents collected from the plaintiffs and others the sum of $3,145. Whereas the defendants reckoned in their counterclaim on the gross expenditure of $8,598.74 and the receipt of $3,270 in rents, for a remainder of $5,328.74 as the amount of their lien, it is our conclusion that the defendants should have a lien of $3,560.16, the difference between $6,705.16 spent and $3,145.

received, as found by the trier of fact on the proof adduced before him. While the plaintiffs contend that the defendants should have nothing because all their advances were part of the usurious transaction, this view fails to take heed of the case law first set out in *Patterson* v. *Birdsall* (64 N. Y. 294, *supra*), and the rule of law which follows the statutory formula (General Business Law, § 372 [now General Obligations Law, § 5–513]) that the borrower is only entitled to recover from the lender, or deprive him of, the excess received over and above the lawful rate of interest (*Goerlich* v. *Jaffa,* 30 Misc 2d 563, 564).

In connection with this appeal, we have also considered the summary judgment of June 17, 1964 as an interlocutory judgment, reviewable on appeal from the final judgment, dated June 28, 1966 (CPLR 5501, subd. [a], par. 1), and affirm the same, despite the defendants' claim that this order was made upon the erroneous use of principles of *res judicata.* This order was not based solely upon the prior determination of the District Court of Nassau County that the original relationship between the parties was that of creditor and debtor, but was further predicated upon an independent determination, based on the proof adduced on the motion for summary judgment, and no part of the District Court determination, that a usurious arrangement for a $2,000 " bonus " to the defendants had been made. The fact that this " bonus " was never paid by the plaintiffs did not preclude the nullification of the original transaction as usurious (*Ganz* v. *Lancaster,* 169 N. Y. 357, 365, *supra*).

Accordingly, the interlocutory judgment entered June 17, 1964 should be affirmed and the judgment entered June 28, 1966 reversed, on the law, without costs, and the defendants, by virtue of the doctrine of subrogation, should be granted a lien of $3,560.16 on the subject premises for expenditures covering the payment of interest and principal on the first and second mortgages and taxes, less the rents collected. The findings of fact should be affirmed.

Christ, Acting P. J., Hopkins, Munder and Martuscello, JJ.. concur.

Interlocutory judgment entered June 17, 1964 affirmed and judgment entered June 28, 1966 reversed, on the law, without costs, and defendants are granted a lien of $3,560.16 on the subject premises for expenditures covering the payment of interest and principal on the first and second mortgages and taxes, less the rents collected. The findings of fact are affirmed.